Louie R. MURRAY, III; Ricky M. Weaver, Plaintiffs–Appellants,

v.

CITY OF SAPULPA; Ja'Ella Vanatta; Larry Stansbury; Carol McMasters; Charles Lacy; Bill Erwin; Chris Carlton; Rick Bruner; Howard Brown; Roger Minor; Ron Sole; Tom Clark, Police Chief; Barbara McCoy; Jack McCoy, Patrol Officer; Kevin Abraham; Steven Keaton; Phil McCormick, Defendants–Appellees.

No. 93–5223.

United States Court of Appeals, Tenth Circuit.

Jan. 23, 1995.

Frederick W. Southern, Jr., Oklahoma City, OK, for plaintiffs-appellants.

Don R. Martin, Jr. (Kathryn D. Mansell and Reggie N. Whitten on the brief), Mills,

Whitten, Mills, Mills & Hinkle, Oklahoma City, OK, for defendants-appellees.

W. Craig Sutter (Susan B. Loving, Atty. Gen. of Oklahoma, with him on the brief), Asst. Atty. Gen., Oklahoma City, OK, for defendant-appellee Jack McCoy.

Before BALDOCK and BRORBY, Circuit Judges, and KANE,* District Judge.

BRORBY, Circuit Judge.

Plaintiffs Louie R. Murray, III, and Ricky M. Weaver, former City of Sapulpa, Oklahoma, police officers, filed a suit against various employees of the City of Sapulpa and other individuals. The police officers alleged violations of 18 U.S.C. § 1962, 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1981, and 42 U.S.C. § 1985. The district court granted summary judgment for the defendants finding the police officers failed to establish a RICO, civil rights, or conspiracy claim. The district court also dismissed the pendent state tort claim of interference with contract. On appeal, Messrs. Murray and Weaver challenge the granting of summary judgment only on their Title VII and conspiracy claims. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

■ When reviewing the district court's ruling on a summary judgment motion, we review the motion de novo. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). We must decide whether any genuine issue of material fact is in dispute and, if not, whether the law was correctly applied. We must look at the record in the light most favorable to the party opposing summary judgment. *Boren v. Southwestern Bell Telephone Co.,* 933 F.2d 891, 892 (10th Cir.1991). Summary judgment is only appropriate if the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Mr. Murray, an African American man, and Mr. Weaver, a White man, worked for the City of Sapulpa as police officers. One

* The Honorable John L. Kane, Senior United States District Judge for the District of Colorado, sitting by designation.

evening, Messrs. Murray and Weaver were working off-duty as security guards at an apartment building when they apprehended a juvenile drug suspect and confiscated a white powdery substance believed to be crack cocaine. Mr. Weaver contacted the police department to transport the juvenile downtown for questioning. Meanwhile, Mr. Murray brought the juvenile into a room in the apartment building to question him about the drugs. Officer Barbara McCoy, accompanied by her husband, Highway Patrol Trooper Jack McCoy, arrived to pick up the juvenile.

At the police department, the juvenile was returned to the custody of Messrs. Murray and Weaver who further questioned the suspect. They were unable to contact the juvenile's parents, so Mr. Murray drove the suspect home. Before leaving the police station, however, Mr. Murray flushed the white powdery substance down the toilet and warned the juvenile that if he got caught with drugs again he would face criminal prosecution.

More than six months later, Officer McCoy reported this incident to Assistant Chief Tom Clark. However, she included an allegation that Mr. Murray was playing Russian Roulette with the juvenile when she and her husband arrived to transport the suspect. Trooper McCoy confirmed this report. Assistant Chief Clark conducted an internal investigation into the matter and held a hearing on the continued employment of Mr. Murray. After the hearing, at which Mr. Murray was represented by counsel, Chief Ron Sole decided to terminate Mr. Murray based upon the findings that Mr. Murray illegally disposed of the alleged crack cocaine and illegally used a hand gun.[1]

Approximately one month before Officer McCoy reported the Russian Roulette incident, Mr. Weaver with three other officers arrested a drug suspect. During this arrest, Mr. Weaver and one of his co-officers, Phillip Main, had a physical altercation with the suspect. After the suspect had been arrested and handcuffed, he spit in Mr. Weaver's face. In response, Mr. Weaver struck the

suspect on the head with a flashlight. Mr. Main struck the suspect in the face.

Mr. Weaver filed an accurate police report of the incident including a description of the altercation. Mr. Main filed a false report by failing to disclose the altercation. Upon learning of the physical altercation, the police department did not allow Mr. Weaver to return to work. One week later, Mr. Main was terminated for filing a false report and also for hitting the suspect.

Chief Sole gave Mr. Weaver a due process hearing and terminated Mr. Weaver based upon his own admission of hitting the suspect over the head. Mr. Weaver appealed his termination to the City Manager and then to the Board of Review. Mr. Weaver was told he would be reinstated if he could guarantee such behavior would not occur again. Mr. Weaver responded that he could not make such a promise because it was a reflex action. The Department of Justice sent Mr. Weaver a letter stating that he had not violated the suspect's civil rights.

 The Supreme Court has laid out the allocation of burdens for Title VII discriminatory treatment suits. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must satisfy a prima facie case. To establish a prima facie case of disparate treatment, Mr. Murray must show (1) he is within the protected class or minority; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position remained open or was filled by a non-class member. *Id.* at 802, 93 S.Ct. at 1824. To establish a prima facie case of retaliation Messrs. Murray and Weaver must each show (1) he engaged in opposition to Title VII discrimination; (2) he was subject to adverse employment action subsequently to or contemporaneously with the protected activity; and (3) "a causal connection [exists] between the protected activity and the adverse employment action." *Burrus v. United Telephone Co. of Kansas,* 683 F.2d 339, 343 (10th Cir.), *cert. denied,*

---

1. The juvenile sued the City of Sapulpa for the officers' violation of his civil rights. The City of Sapulpa paid a settlement to the juvenile. Criminal charges were also brought against Messrs. Murray and Weaver. After a full trial, the jury found Messrs. Murray and Weaver not guilty of violating the juvenile's civil rights.

459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982).

■ If the plaintiff satisfies the prima facie requirements under the Title VII, then the case enters the second stage, and the burden of production moves to the defendant. It is the burden of the defendant to present "a legitimate, nondiscriminatory reason" for its action. *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978). The explanation "must be legally sufficient to justify judgment for the defendant." *Carey v. U.S. Postal Service,* 812 F.2d 621, 624 (10th Cir.1987). If the defendant articulates a legitimate, nondiscriminatory reason for its action, then the burden of production moves back to the plaintiff. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). In this third stage of the discrimination analysis, the plaintiff must show race was a determinative factor in the defendant's employment decision, or show the defendant's explanation for its action was merely a pretext. *See Faulkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1424–25 (10th Cir.1993). Failure to come forward with evidence rebutting the defendant's explanation may entitle the defendant to judgment. *See Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094–95.

■ Although the *McDonnell Douglas* burden shifting analysis is a tool the courts use in Title VII cases, the ultimate burden of persuasion rests upon the plaintiff.[2] *Id.* at 253, 101 S.Ct. at 1093–94. The burden shifting analysis drops out of consideration when the case is submitted to the jury on the merits. *Messina v. Kroblin Transp. Systems, Inc.,* 903 F.2d 1306, 1308 (10th Cir. 1990). Thus, the ultimate issue for us in reviewing the summary judgment is whether Messrs. Murray and Weaver have raised a question of material fact of discrimination entitling them to proceed to trial.

■ It is undisputed Messrs. Murray and Weaver were terminated from employment with the City of Sapulpa Police Department. Mr. Murray alleges he was terminated because he is African American and because he filed complaints with the Equal Employment Opportunity Commission. Mr. Weaver claims he was terminated in retaliation for supporting his friend and co-worker, Mr. Murray. The defendants have articulated legitimate, nondiscriminatory reasons for Messrs. Murray's and Weaver's terminations: each violated local rules and regulations. Mr. Murray disposed of police contraband,[3] and Mr. Weaver struck a suspect over the head. Thus, Messrs. Murray and Weaver must respond by showing how these nondiscriminatory explanations for their terminations are pretextual or how they were truly terminated for discriminatory reasons.

Mr. Murray claims the Police Department's explanation for his termination is not credible, and his termination was in retaliation for charges he filed against the police department. Four months before his discharge, Mr. Murray filed a complaint with the Equal Employment Opportunity Commission against the City of Sapulpa Police Department. Then, two months before his discharge and one month before Officer McCoy reported the Russian Roulette incident, Mr. Murray filed another complaint with the Equal Employment Opportunity Commission. The record on appeal does not contain any information on these complaints, however, it simply reveals that the two complaints were referred to during Mr. Murray's due process hearing. Without further explanation of the complaints and how they were used at Mr. Murray's discharge hearing, we are unable to draw any conclusions on the causal connection between the complaints and Mr. Murray's discharge. Mr. Murray engaged in protected activity and faced adverse employment action subsequent to the

---

2. Also, the burden shifting analysis need not be strictly applied. *See Schwager v. Sun Oil Co.,* 591 F.2d 58, 61, n. 1 (10th Cir.1979); *see also McDonnell Douglas,* 411 U.S. at 802, n. 13, 93 S.Ct. at 1824, n. 13; *Burdine,* 450 U.S. at 253, n. 6, 101 S.Ct. at 1094, n. 6.

3. The Police Department also relied on the allegations of Russian Roulette in justifying their

termination of Mr. Murray. Since the verisimilitude of this incident is disputed and since the Police Department relied upon another reason for Mr. Murray's discharge, we shall not consider the Russian Roulette as a legitimate, nondiscriminatory reason for the termination.

protected activity, however, he has not introduced sufficient evidence to support the inference of a causal connection. He has presented insufficient evidence to support the inference that his termination was in retaliation to his complaints to the Equal Employment Opportunity Commission.

Mr. Murray admits he did flush the substance, which he thought was crack cocaine, down the toilet. This action is prohibited by City of Sapulpa rules and regulations. Mr. Murray claims pretext is shown because others employed by the police department have destroyed evidence without being terminated. If similarly situated white employees were treated differently with respect to enforcement of police rules and regulations, this may show the allegedly nondiscriminatory explanation for Mr. Murray's discharge was pretextual. Mr. Murray refers to three affidavits, which were attached to his Motion to Reconsider, to show dissimilar treatment. These affidavits from City of Sapulpa police officers make general comments on police culture. Each affidavit is limited to the statement:

> The undersigned states that it was general knowledge of the administration that it was the common practice of members of the Sapulpa, Oklahoma police force that where it was determined that charges would not be filed, after a person was taken into custody, all contraband that could be used as evidence was destroyed by the officer on the scene.

To survive summary judgment, "nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991). The three affidavits presented to show dissimilar treatment are merely conclusory and do not provide any factual bases for the inference that others were treated differently. Mr. Murray's allegation that he was treated differently than similarly situated white officers is not supported by the record. Thus, Mr. Murray has failed to present evidence showing he was terminated for discriminatory or retaliatory reasons and cannot survive summary judgment.

Mr. Weaver also claims a violation of Title VII. The defendants explain Mr. Weaver was discharged from the police department for using excessive force against a restrained suspect. However, Mr. Weaver claims he was truly terminated for supporting his friend Mr. Murray. Mr. Weaver argues this is revealed by the department's disparate treatment of him. He alleges he was the only officer of four involved in the arrest to be immediately terminated. However, the record reveals, as soon as the department learned of Mr. Main's participation in the physical altercation, he too was discharged. There is no showing that the other two arresting officers used excessive force after the suspect was handcuffed. Mr. Weaver has not demonstrated that he was treated any differently than the other officers.

Mr. Weaver also cites incidents in which two Sapulpa police officers may have used excessive force but were not disciplined. In the first, a Sapulpa officer, in response to a bite on the arm, struck a combative prisoner in the head while the prisoner was handcuffed to a gurney. This officer was not disciplined. The second officer bit a prisoner on the nose after the prisoner butted and spit at the officer. This officer resigned before any disciplinary action was taken. The first officer responded to a physical attack by a combative prisoner. The prisoner Mr. Weaver struck had spit at him but had not harmed him. The second officer resigned, thus there was little for the police department to do in disciplining that officer. Because the incidents offered by Mr. Weaver to show disparate treatment are factually dissimilar to Mr. Weaver's conduct and the consequences thereof, the evidence is insufficient to support the inference that the police department's reason for discharging Mr. Weaver was improper.

Both Messrs. Murray and Weaver also argue the district court erred in dismissing their conspiracy claims. They alleged a conspiracy to violate their civil rights pursuant to 42 U.S.C. § 1985. The district court determined they had "failed entirely to offer evidence of a conspiracy."

To succeed with a § 1985(3) claim, Messrs. Murray and Weaver must show (1) the existence of a conspiracy (2) intended to deny them equal protection under the laws or equal privileges and immunities of the laws (3) resulting in an injury or deprivation of federally-protected rights, and (4) an overt act in furtherance of the object of the conspiracy. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971); *Ward v. St. Anthony Hosp.*, 476 F.2d 671, 676 (10th Cir.1973).

Messrs. Murray and Weaver allege the conspiracy was conducted by the McCoy's and the juvenile suspect detained by Messrs. Murray and Weaver. The goal of the conspiracy was to deprive Mr. Murray, as an African American police officer, of his rights as a police officer and to deprive Mr. Weaver, as Mr. Murray's supporter, of his rights as a police officer. The overt act in furtherance of the conspiracy was to falsely report the allegation that Mr. Murray dry-fired a gun at a detained juvenile drug suspect. They claim the conspiracy is evidenced by inconsistencies among the reports filed by Officer McCoy, Trooper McCoy, and the juvenile. The basis for the conspiracy claim was the testimony in regard to the Russian Roulette incident causing Messrs. Murray and Weaver to be terminated. However, we have already determined that other reasons justified the terminations. Thus, Messrs. Murray and Weaver cannot show that the alleged conspiracy injured or deprived them of a right.

Some of the defendants, in their individual capacities, have raised the defense of qualified immunity. Since we have concluded none of Messrs. Murray's and Weaver's claims on appeal can survive summary judgment, it is unnecessary for us to address the specific immunity issues. The district court was correct in granting summary judgment, accordingly, we **AFFIRM.**