**Bruce E. ROEMER, Plaintiff,**

v.

**PUBLIC SERVICE COMPANY OF COLORADO, Defendant.**

No. 94–D–618.

United States District Court, D. Colorado.

Jan. 10, 1996.

Mark S. Bove, Denver, CO, for Plaintiff.

Walter V. Siebert, James G. Fiero, Sherman & Howard, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

DANIEL, District Judge.

### I. INTRODUCTION

Defendant Public Service Company of Colorado ("PSCo") moves pursuant to Fed. R.Civ.P. 56 for summary judgment with respect to Plaintiff Bruce B. Roemer's employment discrimination claims. Plaintiff seeks relief under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.*

Plaintiff, a white male, was employed by PSCo for more than 22 years, and claims that his termination in 1992 at age 46 was discriminatory. Plaintiff asserts an age discrimination claim under the ADEA on disparate treatment and disparate impact theories and a sex discrimination claim under Title VII on disparate treatment and disparate impact theories. PSCo denies the existence of any discrimination and contends that Plaintiff's job was eliminated as part of a reorganization process which had legitimate business purposes and was not a pretext for discrimination.

PSCo argues that no genuine issue of material fact exists and that judgment is appropriate as a matter of law on Plaintiff's claims pursuant to Fed.R.Civ.P. 56 because, *inter alia:* (i) Plaintiff has no evidence sufficient to establish a prima facie case of discrimination; (ii) Defendant undisputedly articulates a legitimate nondiscriminatory reason for Plaintiff's termination; and (iii) Plaintiff has no evidence of pretext or gender or age animus. PSCo further claims that it is entitled to judgment as a matter of law on Plaintiff's claims because (i) Plaintiff's statistical analysis includes improper comparisons; (ii) Plain-

tiff has not identified a specific employment practice; (iii) PSCo has established a business justification defense; (iv) Plaintiff has no evidence of any alternative employment practices which would achieve the same legitimate business goals; and (v) a disparate impact claim is not cognizable under the ADEA.

### II. ANALYSIS

#### A. Legal Standard

In considering a motion for summary judgment, the Court is mindful that "summary judgment is a drastic remedy" and should be awarded with care. *Conaway v. Smith,* 853 F.2d 789 (10th Cir.1988). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a movant has satisfied the burden imposed by Rule 56, all factual disputes and inferences must be drawn in favor of the nonmoving party. *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980).

#### B. ADEA Claims

##### 1. Disparate Impact Claim

PSCo contends that disparate impact is not a cognizable theory under the ADEA. Based on the January 4, 1996 decision of the Tenth Circuit in *Ellis v. United Airlines, Inc.,* 73 F.3d 999 (10th Cir.1996), I must agree. The Tenth Circuit therein recognized that whether a disparate impact claim can be brought under the ADEA is an open question, citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609–10, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). However, after interpreting the statutory text and congressional intent behind the ADEA, the Tenth Circuit in *Ellis* concluded that the ADEA was not enacted to address disparate impact claims. Thus, at least in this Circuit, disparate claims are not cognizable under the ADEA. This decision mandates that summary judgment be GRANTED as to Plaintiff's disparate impact claim under the ADEA.

## 2. Disparate Treatment Claim

PSCo also argues that summary judgment is appropriate as to Plaintiff's disparate treatment claim. In order to establish a prima facie case of age discrimination under the disparate treatment theory, the plaintiff must show: (1) that he is within the protected group; (2) he was performing satisfactory work; and (3) similarly situated younger employees were treated more favorably in the layoff process. *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1454 (10th Cir.1994). Once the plaintiff has established a prima facie case, the defendant must come forward with admissible evidence of a nondiscriminatory reason for the adverse action. *Id.* at 1455. If defendant makes such a showing, the plaintiff has the opportunity to show that the stated reason was a mere pretext for unlawful discrimination. *Id.*

In the case at hand, PSCo does not contest that Plaintiff has established a prima facie case of age discrimination. It is undisputed that Plaintiff was within the protected class, he performed satisfactory work, and Plaintiff has demonstrated that several hundred younger employees were treated more favorably in the layoff process. Instead, PSCo argues that it had a nondiscriminatory reason for the adverse action, *i.e.*, to make the organization more efficient and effective. PSCo further argues that Plaintiff has no evidence that this stated reason was a mere pretext for unlawful discrimination.

Plaintiff contends, first, that PSCo has not articulated a sufficiently clear, specific and credible nondiscriminatory reason for the terminations. I disagree, noting that the manager of the IT & S organization, Mr. Fetchenhier, testified in his affidavit that the terminations occurred as a result of an effort to make the organization more efficient and effective. Plaintiff further contends that his expert's statistical analysis by age in both the IT & S organization where Plaintiff was employed and company wide are sufficient circumstantial evidence of pretext and animus. The statistical evidence shows that an employee 40 or older is 17.56 times more likely to be terminated than an individual who is younger than 40. Thus, the statistical analy-

sis concludes that age has a statistically significant impact on termination decisions.

Statistical data showing an employer's pattern of conduct toward a protected class can create an inference that an employer discriminated against individual members of the class. *Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 746 (10th Cir.1991). However, in order for statistical evidence to create a discriminatory inference, it must show a significant disparity and eliminate nondiscriminatory explanations for the disparity. As the court in *Fallis* noted, "a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals". *Id.*

I find that Plaintiff's statistics do demonstrate a significant disparity in the treatment of younger workers sufficient to create an inference of discrimination. Thus, the issue becomes whether the statistics show disparate treatment between comparable individuals. The statistics focus primarily on the functional analysis or organizational analysis of January 1, 1991 through January 1, 1993 (hereinafter "functional analysis"). PSCo argues that Plaintiff was terminated as a result of the reorganization of the IT & S division, not as a result of the functional analysis. PSCo further argues that the statistical evidence concerns employees that are not similarly situated to Plaintiff, and that the functional analysis does not constitute a single employment practice but a conglomeration of many decisions not related to the one resulting in the elimination of his position. PSCo asserts that when a plaintiff wishes to use company wide statistics, he must prove that the process was applied throughout the company in a manner virtually identical to the manner in which it was applied to him, and that all the evidence in this case is to the contrary, citing *Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230 (10th Cir.1991) and *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1431 (10th Cir.1993).

I have carefully examined the evidence and conclude that, contrary to PSCo's assertions, Plaintiff has established a genuine issue of material fact on these issues. Plaintiff asserts that he was terminated, not as a result

of the IT & S reorganization, but in connection with the functional analysis. In support of this, Plaintiff submits sworn interrogatory responses from PSCo in another case pending in this Court, *Banas v. Public Service*, 93–B–664, which unequivocally state that Plaintiff was terminated as a result of the functional analysis. Thus, a genuine issue of material fact exists as to whether Plaintiff was terminated as a result of the functional analysis.

Second, a genuine issue of material fact exists regarding whether the functional analysis constitutes a single employment practice applied throughout the company in a manner virtually identical to the manner in which it was applied to Plaintiff. Plaintiff asserts that the functional analysis was formed to identify places where PSCo could save money, targeted at $20 million dollars. With respect to any terminations that occurred in any particular division of PSCo during this period, every manager had to report to Marilyn Taylor, the person in charge of the functional analysis, before the termination could take place. This included the manager of the IT & S organization, Mr. Fetchenhier, who testified that the reorganization plan in IT & S that resulted in Plaintiff's termination was forwarded to his supervisor and then on to Ms. Taylor for approval in accordance with the final result of the functional analysis. Thus, the evidence introduced by Plaintiff shows that, although there may have been recommendations by managers in each division with respect to the division's terminations, including IT & S, these recommendations had to be approved in accordance with the company wide functional analysis.

██ I recognize that Plaintiff's statistics regarding the functional analysis do not directly address whether the positions and performance ratings of the employees subject to it were comparable to Plaintiff. However, I believe that Plaintiff's evidence regarding the functional analysis being applied in a comparable manner to all employees on a company wide basis creates a genuine issue of material fact as to whether Plaintiff's statistics show disparate treatment between comparable individuals as required under the law. Viewing this evidence in the light most favorable to the Plaintiff, there is enough evidence of discrimination to establish pretext or animus. In making this finding, the Court notes that summary judgment is not ordinarily appropriate for settling issues of intent or motive. *Romero v. Union Pacific R.R.*, 615 F.2d 1303, 1309 (10th Cir.1980). Accordingly, summary judgment is DENIED as to Plaintiff's disparate treatment claim under the ADEA.

### C. Gender Discrimination Claims under Title VII

#### 1. Disparate Treatment

██ As PSCo correctly recognizes, the presumptions in Title VII claims that are valid when a plaintiff belongs to an historically disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group. *Livingston v. Roadway Express, Inc.*, 802 F.2d 1250, 1252 (10th Cir.1986). Thus, to establish a prima facie case of reverse discrimination based on gender, a plaintiff must show, in addition to the other required elements, "background evidence" supporting the inference that the employer is "one of those unusual employers that discriminates against the majority." *Id.* at 1253. Alternatively, a plaintiff may establish a prima facie case by "indirect evidence whose cumulative probative force, apart from the presumption's operation, would suffice under the controlling standard to support as a reasonable probability the inference that but for plaintiff's [gender] he would [not have been terminated]." *Notari v. Denver Water Dept.*, 971 F.2d 585, 590 (10th Cir.1992), quoting *Holmes v. Bevilacqua*, 794 F.2d 142, 146 (4th Cir.1986) (en banc).

██ PSCo contends that Plaintiff has failed to meet this burden and that a prima facie case of gender discrimination has not been proven. I agree. Plaintiff's evidence of historical circumstances is that during the 1960's and the early 70's when he was hired, PSCo was overwhelmingly white and male. Through the late 70's, the 80's and the early 90's, PSCo mounted a concerted effort to hire and promote minorities and women, including an affirmative action program. PSCo implemented a program in 1986–87 to eliminate older employees, predominantly white males,

by means of early retirement incentives. In 1991–92, PSCo considered an early retirement program, but rejected it as too expensive. PSCo was also the subject of an audit by the Office of Federal Contract Compliance Programs as to its affirmative action programs. Finally, Plaintiff asserts that the removal of disproportionate numbers of older, male employees would result in greater savings to PSCo. Thus, Plaintiff argues that PSCo had powerful motives in 1991–92 to discriminate against "majority" employees sufficient to support the inference that PSCo is that unusual employer who discriminates against the majority.

These allegations are not sufficient to create a genuine issue of material fact. Plaintiff offers no credible evidence that the makeup of the PSCo workforce was "overwhelmingly white and male" other than speculation contained in his unsubstantiated affidavit testimony. Plaintiff also offers no evidence but his conclusory allegations that PSCo implemented a program in 1986–87 to eliminate older employees. Moreover, Plaintiff offers no evidence of how any actual affirmative action plan impacted him or was discriminatory. The fact that PSCo considered an early retirement program or was the subject of an audit by the Office of Federal Contract Compliance Programs as to its affirmative action programs does not show that these programs were discriminatory. Finally, the fact that PSCo had a motive to fire older employees to save money could be true for any employer. That assertion, without some evidence that PSCo actually possessed this motive and intended to implement it, is insufficient to create a genuine issue of material fact with respect to the gender discrimination claim. Plaintiff's affidavit testimony consists of rumors, conclusory allegations and/or subjective beliefs which are insufficient to prevent the entry of summary judgment. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 584–85 (6th Cir.1992).

Plaintiff also asserts that the actual statistical results of the terminations and demotions in the IT & S division show reverse gender discrimination sufficient to support a reasonable probability that Plaintiff would have survived the functional analysis had he been a female. However, Plaintiff's statistical analysis prepared by his expert does not address gender discrimination. Moreover, the actual statistical comparisons in Plaintiff's organization that Plaintiff relies upon do not establish a statistically significant amount of discrimination. Plaintiff asserts that eleven men and five women were terminated from his division, resulting in terminations of 69% for men and 33% for women. Taking the evidence in the light most favorable to Plaintiff, the pool of IT & S employees was 61% male and 39% female.[1]

Defendant argues that for statistics to be relevant to a disparate treatment claim they must also be relevant to disparate impact. Plaintiff essentially concedes this, stating that since his statistics are relevant on the disparate impact issue, they are also relevant on the disparate treatment claim. Contrary to Plaintiff's assertion, Plaintiff has failed to demonstrate that these statistical comparisons constitute the kind of substantial impact required by law. *See Drake v. City of Fort Collins,* 927 F.2d 1156, 1161 (10th Cir.1991) (in a disparate impact claim, plaintiff must show that an identified hiring practice has a substantial adverse impact on a group protected by Title VII); *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); *Waisome v. Port Authority of New York and New Jersey,* 948 F.2d 1370, 1375 (2nd Cir.1975) (statistical evidence may be probative where it reveals a disparity so great that it cannot be accounted for by chance). Certainly, there is no way of telling from Plaintiff's actual statistical comparisons whether the modest impact shown could be simply due to chance or factors other than gender. Moreover, Plaintiff's statistics and other evidence fail to show that, but for Mr. Roemer's gender, he would

---

1. Plaintiff further asserts that, company-wide, 68% of the terminations were of men and 32% were of women, and 80% of demotions were of men and 20% of women. Plaintiff asserted that discovery is ongoing to determine the actual pool of employees company wide and that this would be provided to the Court. However, the Court previously ruled that Plaintiff was not entitled to this discovery, and Plaintiff has not provided this data to the Court from any other source. Accordingly, the only evidence before the Court is with respect to the IT & S organization.

not have been terminated, since both men and women were terminated in the IT & S organization in very close proportion to the actual pool of employees.

Based on the foregoing, I find that Plaintiff has failed to present sufficient evidence of "background circumstances" or circumstantial evidence to show that a genuine issue of material fact exists regarding PSCo's summary judgment motion as to the gender claims. Therefore, I do not need to consider Defendant's argument that Plaintiff has offered insufficient evidence of pretext. Accordingly, summary judgment is GRANTED as to Plaintiff's disparate treatment claim under Title VII.

### 2. Disparate Impact

Finally, Defendant argues that judgment is appropriate as to Plaintiff's disparate impact claim of reverse discrimination because he fails to show a substantial impact. I agree, for the reasons discussed in the preceding section. Plaintiff has failed to present evidence to demonstrate a significant impact of PSCo's employment practice on men. In fact, Plaintiff admits in his response brief that the statistical comparisons he is relying on show only a "modest" impact. Accordingly, summary judgment is GRANTED as to Plaintiff's disparate treatment claim under Title VII.

### III. CONCLUSION

For the above stated reasons, it is ORDERED that Defendant Public Service Company of Colorado's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. It is ORDERED that summary Judgment is DENIED as to Plaintiff's disparate treatment claim of age discrimination under the ADEA. It is further ORDERED that summary judgment is GRANTED as to Plaintiff's (i) disparate impact claim of age discrimination under the ADEA, (ii) Plaintiff's disparate impact claim of gender discrimination under Title VII and (iii) Plaintiff's disparate treatment claim of gender discrimination under Title VII.