Phillip ARCHULETA, Plaintiff,

v.

STATE of Colorado, PROBATION DEPARTMENT, 12TH JUDICIAL DISTRICT, Defendant.

No. 96–S–2989.

United States District Court,
D. Colorado.

May 8, 1998.

different statutory provision, 42 U.S.C. § 7410(a)(3), which was repealed by the 1990 Amendments to the CAA.

Remigio Pete Reyes, Denver, CO, for plaintiff.

Laura Marie Maresca, Attorney's General office, Gen. Lagal Services Section, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

SPARR, District Judge.

THIS MATTER comes before the court on the Defendant's Motion for Summary Judgment (filed March 4, 1998). The court has reviewed the motion, Plaintiff's Response (filed April 8, 1998), Defendant's Reply (filed April 27, 1998), the exhibits and affidavits, the entire case file, and the applicable law and is sufficiently advised in the premises.

### 1. Factual Background

Plaintiff was hired into the Probation Department by Benjamin Duarte effective February 1, 1994. (Defendant's Motion for Summary Judgment, Exhibit A p. 1). Plaintiff was hired to fill two positions: a three-quarter time contract position with the Juvenile Intensive Supervision Program ("ISP"), and a one-quarter time probation officer position. (*Id.*, Exhibit A p. 2–3; Exhibit A–1). Prior to his employment with the Probation Department, Plaintiff worked for four years as the Diversion Coordinator for the 12th Judicial District Attorney's Office. (*Id.*, Exhibit A p. 3; Exhibit C p. 26; Complaint ¶ 6). Plaintiff's job duties in the Probation Department's ISP job were virtually identical to the work he had been performing since 1992. (*Id.*, Exhibit A p. 3; Exhibit C p. 27).

Sometime in March of 1994, Plaintiff expressed to the Chief Probation Officer (CPO), Ms. Quintana, his interest in a full time probation officer position. Ms. Quintana subsequently moved Plaintiff to the full time probation officer position that had been created by her own promotion to CPO. (*Id.*, Exhibit A p. 3; Exhibit A–2; Exhibit B p. 2). For the first three or four weeks of Plaintiff's employment with the Probation Department, Plaintiff had two or three clients in the ISP and no probation clients. (*Id.*, Exhibit C p. 37–38). By June of 1994, Ms. Quintana had concerns regarding Plaintiff's job performance. Ms.

Quintana gave Plaintiff an unsatisfactory performance evaluation and extended his probationary period. Soon thereafter, Ms. Quintana requested Plaintiff's resignation and Plaintiff voluntarily resigned on July 12, 1994. (*Id.*, Exhibit B pp. 2–5; Exhibit C pp. 134–37; Depo. Exhibit 11).

Plaintiff's complaint alleges that Defendant discriminated against him in the terms and conditions of his employment because of his national origin, Hispanic, and his gender, male. He alleges that he was forced to resign from his job with the Probation Department under threat of termination because his supervisor, Ms. Quintana, found his job performance inadequate. He alleges that Ms. Quintana, an Anglo female,[1] intended to force him out of his job in order to hire an Anglo female, and that her assessment of his work performance was directed at this goal.

### 2. Standard of Review

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991). A material fact is one that might affect the outcome of the suit under the governing law. An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is an absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). The movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548; *John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 503 (10th Cir.1994); *Universal Money Ctrs., Inc. v. AT & T*, 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). If the moving party meets its burden, the non-moving party may not rest upon its pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991); *Applied Genetics Int'l. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

In applying the summary judgment standard, the court construes the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Blue Circle Cement, Inc. v. Board of County Comm'rs.*, 27 F.3d 1499, 1503 (10th Cir. 1994); *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). However, the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *FDIC v. Hulsey*, 22 F.3d 1472, 1481 (10th Cir.1994) (emphasis in original). To constitute a genuine factual dispute, there must be more than a scintilla of evidence; summary judgment may be granted if the evidence is merely colorable or is not significantly probative. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir.1993) (citation omitted). "[T]he

---

1. Although Ms. Quintana's national origin is Anglo, she has been married to a Hispanic

man for thirty one years and shares his surname.

relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Bingaman v. Kansas City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir.1993), quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### 3. Plaintiff's Second Claim for Relief

Defendant's motion is easily decided as to Plaintiff's Second Claim for Relief. Plaintiff alleges in his Second Claim for Relief that he was "denied his right to equal employment opportunity under 42 U.S.C. § 1981." Defendant asserts on summary judgment that Plaintiff's Second Claim for Relief is barred by the statute of limitations applicable to § 1981 claims. The law supports Defendant's position.

As § 1981 "does not specify a time period in which claims under that statute must be brought," the court must "look to analogous state law for a limitations period ... and apply Colorado's residual two-year statute of limitations for personal injury actions." *Reynolds v. School District No. 1,* 69 F.3d 1523, 1532–33 (10th Cir.1995) (citations omitted). Because Plaintiff submitted his resignation to Defendant on July 12, 1994, over two years before he filed the instant action, the statute of limitations bars his § 1981 claim. *Id.* at 1532–33. Defendant is entitled to summary judgment on Plaintiff's Second Claim for Relief.

### 4. Plaintiff's First Claim for Relief

Plaintiff alleges in his First Claim for Relief that he was "denied his right to equal employment opportunity under 42 U.S.C. § 2000e *et seq.*" based on his gender, male, and his national origin, Hispanic. Plaintiff "believes that Ms. Quintana's preference to hire an Anglo female was the reason that he was forced to resign." (Complaint ¶ 13).

#### a. Reverse Discrimination

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; ..." 42 U.S.C. § 2000e–2(a)(1). "Title VII was enacted to ensure equality of employment opportunities and to eliminate those practices and devices that have historically discriminated on the basis of race, sex, color, religion, or national origin." *Livingston v. Roadway Exp., Inc.*, 802 F.2d 1250, 1251 (10th Cir.1986) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

Title VII prohibits discrimination against groups that historically have not been socially disfavored, as well as groups that historically have been socially disfavored. *Livingston*, 802 F.2d at 1252 (citing *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 278–80, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)). "However, the presumptions in Title VII analysis that are valid when the plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group." *Livingston*, 802 F.2d at 1252. "When a plaintiff who is a member of a favored group alleges disparate treatment, the courts have adjusted the prima facie case to reflect this specific context...." *Livingston*, 802 F.2d at 1252. Plaintiff's allegation that he was subjected to disparate treatment because he is male is subject to a reverse discrimination analysis.

In order for a reverse discrimination claim to survive a summary judgment motion, the movant must first establish a prima facie case. *Notari v. Denver Water Dept.*, 971 F.2d 585, 588 (10th Cir.1992) (citing *McDonnell Douglas*, 411 U.S. at 792, 93 S.Ct. 1817). If the plaintiff carries this initial burden, the burden then shifts to the defendant to show a legitimate non-

discriminatory reason for the challenged employment decision. *Notari*, 971 F.2d at 588. If the defendant meets this burden, the burden then shifts back to the plaintiff to prove that the legitimate reasons were really a pretext for discrimination. *Notari*, 971 F.2d at 588.

In a reverse discrimination case, the prima facie case is adjusted to reflect the reverse discrimination context of the lawsuit. *Reynolds*, 69 F.3d at 1534; *Notari*, 971 F.2d at 589 (citation omitted); *Livingston*, 802 F.2d at 1252. This adjustment requires the plaintiff to show either: background circumstances which demonstrate that the defendant is that unusual employer who discriminates against the majority, *Reynolds*, 69 F.3d at 1534; *Sanchez v. Philip Morris, Inc.*, 992 F.2d 244, 248 (10th Cir.1993); *Notari*, 971 F.2d at 588; *Livingston*, 802 F.2d at 1252 (citations omitted); or, alternatively, that but for the plaintiff's status the challenged employment decision would not have occurred. *Notari*, 971 F.2d at 590–91.

Under the alternative method of proof, even if a plaintiff does not allege sufficient background circumstances (in lieu of showing that he is a member of a protected group), he may still avail himself of the *McDonnell Douglas* presumption if he "presents direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff...." *Notari*, 971 F.2d at 590; *Schrader v. EG & G, Inc.*, 953 F.Supp. 1160, 1166 (D.Colo.1997); *Johnson v. N.T.I.*, 944 F.Supp. 839, 840 (D.Colo.1996); *Roemer v. Public Service Co.*, 911 F.Supp. 464, 468 (D.Colo.1996); *Bellairs v. Coors Brewing Co.*, 907 F.Supp. 1448, 1456 (D.Colo.1995), *aff'd* 107 F.3d 880 (10th Cir. 1997). "[I]t is not enough, under this alternative formulation, for a plaintiff merely to allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged employment decision. Instead, the plaintiff must allege and produce evidence to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." *Id.* "If the evidence is sufficient in that regard, the court must permit the defendant to articulate a non-discriminatory justification for its employment decision, and then the plaintiff must have the chance to show that the articulated justification is pretextual. *Id.*

i. Defendant argues that Plaintiff fails to make even a prima facie case because there is insufficient evidence that: (1) Defendant is one of those unusual employers who discriminates against males; or (2) if Plaintiff were not male, Defendant would not have asked him to resign his job. The court agrees.

First, Plaintiff has not presented evidence to show that Defendant is that unusual employer who discriminates against the majority. The evidence demonstrates that, during Plaintiff's employment, three Hispanic men, one Hispanic woman, and two Anglo women were employed as probation officers. During Ms. Quintana's tenure as Chief Probation Officer, she hired four probation officers: two Hispanic men, one African American man, and one Anglo woman. (Defendant's Motion, Exhibit A p. 2, Exhibit B p. 1). After Plaintiff resigned, Ms. Quintana placed Teddy Archuleta, a Hispanic male, in Plaintiff's former job. (*Id.*, Exhibit A p. 4, Exhibit A–3, Exhibit A–7, Exhibit B p. 5). Ms. Quintana then placed Ms. Judy McNeil-smith (an Anglo female) in Teddy Archuleta's former job. (*Id.*, Exhibit A p. 5, Exhibit A–8, Exhibit B p. 5). During her tenure as Chief Probation Officer, Ms. Quintana gave no other Hispanic or male a less-than-satisfactory performance evaluation, did not extend the probationary period of any other Hispanic or male, nor did she terminate or request the resignation of any other Hispanic or male. (*Id.*, Exhibit A p. 5, Exhibit B p. 5–6). There is no evidence that Defendant had a history of firing or not hiring males or that the Probation Department was disproportionately

composed of females. The court concludes that Plaintiff has not proven the existence of background circumstances which demonstrate that Defendant is the unusual employer who discriminates against the majority.

Nor is there sufficient evidence to demonstrate that, but for his status as a male, Plaintiff would not have been asked to resign his employment. Plaintiff admits that he committed the acts for which Ms. Quintana criticized his job performance and that she was within her authority to criticize his work. (Plaintiff's Response to Motion for Summary Judgment, Exhibit 2 p. 132; Defendant's Motion, Exhibit B pp. 2–4; Exhibit B–1, Exhibit C pp. 129, 134–36, Depo. Exhibit 11). Plaintiff presents no evidence that any female probation officers performed their jobs at a substandard level but were not asked to resign. Although Plaintiff presents the testimony of Ms. Sparrow that her "caseload was a mess at the time, his caseload was in better shape than mine," Ms. Sparrow admits that she did not know everything that happened regarding Plaintiff's performance, that Plaintiff had "problems with presentence reports, typos and mistakes like that, ..," and that female probation officers were held equally responsible for their cases. (*Id.*, Exhibit 5 pp. 44, 60, 64).

Plaintiff alleges that he was given an excessive amount of work and was not given adequate training. However, the evidence demonstrates that Plaintiff was given a lighter work load than anyone else and given ample training. Plaintiff had been performing an almost identical job for two years prior to his employment with the Probation Department. Plaintiff admits receiving training. (Plaintiff's Response, Exhibit 2 p. 125; Defendant's Motion, Exhibit C pp. 57–59, 99–100, 125). Several witnesses have testified about the training Plaintiff received. (Plaintiff's Response, Exhibit 3 pp. 41–42; Exhibit 4 pp. 35–36; Defendant's Motion, Exhibit D pp. 23–27). Plaintiff admits that his problems with missed deadlines were not in any way related to his training. (Defendant's Motion, Exhibit C p. 136). While more training had been available to some probation officers in the past under another CPO, training was "left up to the CPO at the time." (Plaintiff's Response, Exhibit 4 p. 35). Some of the training mentioned by Ms. Sparrow occurred fourteen years before Plaintiff was employed at the Probation Department and under a different CPO. (*Id.* Exhibit 5 pp. 9–10). Many other probation officers learned on the job. (Plaintiff's Response, Exhibit 4 pp. 33–34). Plaintiff has not presented sufficient evidence that similarly situated females were provided more training or given an easier work load than he. Plaintiff actually had a lighter work load than any other probation officer. (Defendant's Motion, Exhibit A p. 4, Exhibit A–5, Exhibit B p. 2).

Plaintiff has presented no evidence that similarly situated females were in any way treated differently than Plaintiff based on their gender. Plaintiff has not met his initial burden of proving a prima facie case of reverse discrimination under Title VII because he has not brought forth sufficient evidence that Defendant is the unusual employer that discriminates against the majority or that but for his gender Ms. Quintana would not have asked for his resignation. Defendant is entitled to summary judgment on Plaintiff's Title VII claim for reverse discrimination.

b. Discrimination Based on National Origin

"The Supreme Court has established, and this circuit has repeatedly adopted, a three-part test to determine whether the plaintiff has established a prima facie case under Title VII for a wrongful termination claim." *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1416–17 (10th Cir.1993). First, a plaintiff must show a prima facie case that: (1) she belongs to a protected class; (2) she was qualified and satisfactorily performing her job; and (3) she was terminated under circumstances giving rise to an inference of discrimina-

tion. *Martin,* 3 F.3d at 1417; *see also McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Murray v. City of Sapulpa,* 45 F.3d 1417, 1420 (10th Cir.1995) (citation omitted); *Cole v. Ruidoso Municipal Schools,* 43 F.3d 1373, 1380 (10th Cir. 1994); *McAlester v. United Air Lines,* 851 F.2d 1249, 1260 (10th Cir.1988).

Once the plaintiff meets the burden of presenting a prima facie case of employment discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the decision which adversely affected the employee. *York v. American Telephone & Telegraph Co.,* 95 F.3d 948, 954 (10th Cir.1996) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817); *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995) (citing *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. 1817); *E.E.O.C. v. Flasher Company, Inc.,* 986 F.2d 1312, 1316 (10th Cir.1992) (citation omitted). Once the defendant has set forth a facially non-discriminatory reason for the decision, the plaintiff assumes the burden to prove that the employment decision was the result of intentional discrimination based on an impermissible motive. *Id.* The plaintiff can prevail either directly by proving that the employer acted with a discriminatory motive or indirectly by showing that the stated reason was a pretext for discrimination prohibited by Title VII. *Martin,* 3 F.3d at 1417 (citations omitted); *Shapolia v. Los Alamos Natl. Laboratory,* 992 F.2d 1033, 1036–37 (10th Cir.1993) (citation omitted); *Drake v. City of Fort Collins,* 927 F.2d 1156, 1160 (10th Cir.1991).

"The 'factual inquiry' in a Title VII case is [whether] the defendant intentionally discriminated against the plaintiff." *E.E.O.C. v. Wiltel, Inc.,* 81 F.3d 1508, 1513 (10th Cir.1996) (internal quotation marks and citation omitted). Allegations of discrimination must be supported by facts indicating purposeful discrimination. *General Bldg. Contractors Ass'n. Inc. v. Pennsylvania,* 458 U.S. 375, 389–91, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982); *Durham v.*

*Xerox Corp.,* 18 F.3d 836, 839 (10th Cir.), *cert. denied,* 513 U.S. 819, 115 S.Ct. 80, 130 L.Ed.2d 33 (1994). A plaintiff may prove intentional discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Wiltel,* 81 F.3d at 1513 (internal quotation marks and citation omitted). " '[W]hen a plaintiff in a Title VII case [directly] proves that [discrimination] played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision' even in the absence of the discriminatory reason." *Wiltel, Inc.,* 81 F.3d at 1514 (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).

Plaintiff's First Claim for Relief raises allegations of national origin discrimination under Title VII. Title VII prohibits only intentional discrimination *based upon* an employee's protected class characteristics. *Flasher,* 986 F.2d at 1319 (emphasis in original). Plaintiff must prove that the decision was based upon his protected class characteristics rather than upon either a valid nondiscriminatory reason or upon no particular reason at all. *Flasher,* 986 F.2d at 1319. The issue to be determined is whether the Defendant in the particular decision challenged here intentionally discriminated against Plaintiff because of his protected class characteristics.

■ i. Defendant asserts that Plaintiff has not set forth a prima facie case because (1) he was not adequately performing his job duties, and (2) he cannot show that similarly situated non-Hispanic employees were treated any differently. The court agrees.

Defendant has set forth substantial evidence that Plaintiff was not adequately performing his job duties. The evidence shows that during the course of Plaintiff's employment, Ms. Quintana became con-

cerned about Plaintiff's performance. On one occasion, Plaintiff filed a motion to continue a sentencing hearing, representing that he would be out of the jurisdiction on the date of the hearing, when in fact he merely had not prepared the pre-sentence report for the sentencing hearing. The written motion submitted by Plaintiff was rejected by the judge because it was so rife with errors. (Defendant's Motion, Exhibit B pp. 2–3, Exhibit B–1, Exhibit C pp. 128–29). On another occasion, Plaintiff called in sick when he was not actually sick. (Exhibit B p. 3). In June of 1994, Ms. Quintana gave Plaintiff an unsatisfactory performance evaluation. (Defendant's Motion, Exhibit B–2). As a result of Plaintiff's unsatisfactory performance, Ms. Quintana extended Plaintiff's six-month probationary period by three additional months to provide him an opportunity to improve his performance. Without the three-month extension, Plaintiff's unsatisfactory performance rating would have required immediate termination. (Defendant's Motion, Exhibit B p. 4, Exhibit B–2, Exhibit B–3). On another occasion, after his performance evaluation, Plaintiff missed the filing deadline on a presentence report. Ms. Quintana then asked Plaintiff for his resignation. (Defendant's Motion, Exhibit B pp. 4–5). Plaintiff does not refute these incidents. Plaintiff cannot show one of the elements of a prima facie case: that he was adequately performing his job.

Next, Plaintiff has not presented evidence that similarly situated non-Hispanic employees were treated any differently. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Wilson v. Utica Park Clinic, Inc.*, 76 F.3d 394, 1996 WL 50462 (10th Cir. 1996) (citation omitted). A court should also compare the relevant employment circumstances, such as work history and employer policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly

situated. *See David v. City and County of Denver*, 101 F.3d 1344, 1359–60 (10th Cir.1996), *cert. denied*, ⸺ U.S. ⸺, 118 S.Ct. 157, 139 L.Ed.2d 102 (1997) (discussing circumstances to be compared); *Flasher*, 986 F.2d at 1320 (same); *see also Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 986 (10th Cir.1996) (rejecting plaintiff's evidence of differential treatment because other employees were not similarly situated), *cert. denied sub nom. Doan v. Seagate Technology, Inc.*, 519 U.S. 1056, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997).

There is no evidence that other employees were similarly situated regarding their job performance. As discussed in part 4.a.i. of this memorandum opinion and order, above, Plaintiff presents no evidence of disparate treatment of males and/or Hispanics by Ms. Quintana. Although Mr. Pacheco stated that he did not believe Plaintiff received enough training, there is no evidence that Plaintiff received less training than other probation officers or that Plaintiff did not receive enough training *because* he is Hispanic. The evidence shows that the training program was up to the discretion of the CPO and that other probation officers had not received any more training than Plaintiff. In addition, some of Plaintiff's performance problems were not related to his alleged lack of training. Plaintiff cannot show another element of a prima facie case: that he was treated differently than similarly situated non-Hispanic employees.

■ ii. Even if the court could conclude that Plaintiff has made a prima facie case of discrimination, Defendant has presented legitimate, non-discriminatory reasons for the employment decision.

The ultimate issue for the court's review on summary judgment is whether Plaintiff has raised a question of material fact of discrimination entitling him to proceed to trial. *Murray*, 45 F.3d at 1421. "The district court must determine whether the plaintiff has cast sufficient doubt upon the employer's proffered reasons to permit a

reasonable factfinder to conclude that the reasons are incredible...." *Sheridan v. E.I. DuPont de Nemours and Company,* 100 F.3d 1061, 1072 (3d Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997). "[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence....' " *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir.1994) (quoting *Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 531 (3d Cir.1992), *cert. denied,* 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993). Plaintiff must respond to Defendant's legitimate, nondiscriminatory explanations by showing how these explanations are pretextual or how he was truly discharged for discriminatory reasons. *Murray,* 45 F.3d at 1421. "[I]t is not enough ... to disbelieve the employer, ..." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Plaintiff must show "both that the reason was false, and that discrimination was the real reason...." *Hicks,* 509 U.S. at 515, 113 S.Ct. 2742.

Plaintiff alleges Ms. Quintana made two statements that demonstrate her animosity toward him as a Hispanic. Plaintiff alleges that on or about June 28, 1994, after Ms. Quintana gave him the unsatisfactory performance evaluation and asked him to resign, she called him "a typical stubborn Mexican." (Defendant's Motion, Exhibit C p. 151–52). However, because this statement was allegedly made *after* Ms. Quintana's request for Plaintiff's resignation, the court finds it is not sufficiently probative of Ms. Quintana's discriminatory intent in requesting Plaintiff's resignation *before* she allegedly made the statement.

Plaintiff's claim is also based on a statement allegedly made by Ms. Quintana to Cindy Cotten that Plaintiff "looked like a typical macho Mexican who beats his wife." (Defendant's Motion, Exhibit C p.

150–51). This single alleged statement is insufficient to show discriminatory intent. *See Price Waterhouse,* 490 U.S. at 251, 109 S.Ct. 1775; *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir. 1994) (holding that isolated or stray comments, unrelated to the challenged personnel action, are insufficient to show discriminatory animus; the plaintiff must demonstrate that a nexus exists between the allegedly discriminatory statements and the employment actions); *Snoey v. Advanced Forming Technology, Inc.,* 844 F.Supp. 1394, 1397 (D.Colo.1994) (same); *Wiltel, Inc.,* 81 F.3d at 1514; *Heim v. State of Utah,* 8 F.3d 1541, 1546–47 (10th Cir.1993) (manager's remark that "I hate having fucking women in the office" was not direct evidence of discriminatory intent); *Ramsey v. City & County of Denver,* 907 F.2d 1004, 1008 (10th Cir.1990) (director's "feelings about women being better suited to some jobs than others" was not direct evidence of discriminatory intent); *Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537, 1547 (10th Cir.1987), *reh'g denied,* 842 F.2d 253 (10th Cir.1988) (managers' statements that a plaintiff could not be promoted because he was "too damned old" and that other plaintiffs were too old to learn new technologies necessary to promotion and too old to be in supervisory or management positions was not direct evidence of discriminatory intent).

Plaintiff has failed to demonstrate that Defendant's articulated reasons for requesting Plaintiff's resignation are pretextual or unworthy of belief. Plaintiff has not demonstrated that Defendant requested his resignation because of intentional discrimination based on his national origin. Plaintiff's claim fails because he cannot meet his burden on summary judgment to show that Defendant's stated legitimate reason was "a pretext for discrimination against a protected class." *Flasher,* 986 F.2d at 1321 (emphasis in original). Defendant is entitled to summary judgment

on Plaintiff's Title VII claim for discrimination based on national origin.

The court now being sufficiently advised,

IT IS ORDERED:

1. Defendant's Motion for Summary Judgment is GRANTED. Judgment on the Complaint shall enter in favor of Defendant and against Plaintiff.

2. The trial preparation conference set May 19, 1998 is hereby VACATED.

3. The trial set June 1, 1998 is hereby VACATED.

4. Upon the filing of a bill of costs with the Clerk of the Court, Defendant shall be entitled to its costs as permitted by statute.

5. Each party shall bear his, her, or its own attorney fees.