**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 27 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ORLA LYBROOK,

      Plaintiff-Appellant,

v.

THE MEMBERS OF THE
FARMINGTON MUNICIPAL
SCHOOLS BOARD OF EDUCATION,
GENA BAKER, JAKE VALDEZ,
GAYLE DEAN, JAMES GIPSON and
GEORGE SHARPE, CANDACE K.
YOUNG, Principal, TOM SULLIVAN,
Superintendent, DR. ANNETTE
MOOREHEAD, Director of Elementary
Education, FLOYD KURLEY, Director of
Personnel, in their official and individual
capacities,

      Defendants-Appellees.

No. 98-2326

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-97-1280-LH/DJS)**

---

Donna L. Dagnall, (Brian A. Thomas with her on the Briefs) Dagnall, Rames & Thomas
LLC, Albuquerque, New Mexico, for the Appellant.

Terrill E. Pierce, (Daniel P. Ulibarri and Elizabeth L. German on the Brief) of Brown and
German, Albuquerque, New Mexico, for the Appellees.

---

Before **KELLY, HOLLOWAY** and **BRISCOE**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

Plaintiff/appellant Orla Lybrook, a teacher, brought this action against various school officials of the Farmington Municipal Schools ("the School"). Ms. Lybrook alleges that the School (1) retaliated against her because she exercised her right to free speech under the First Amendment, and (2) denied her procedural due process. The School moved for dismissal and summary judgment, arguing that it was entitled to qualified immunity. The district court dismissed the action and all claims with prejudice and therefore denied the motion for summary judgment as moot. I App. 193-196. This timely appeal ensued. We have jurisdiction pursuant to 28 U.S.C. § 1291.

**I**

Ms. Lybrook's complaint alleges that from March 1984 until May 30, 1997, she was a teacher with the Farmington Municipal Schools. She avers that she resigned then due to a constructive discharge. See I App. at 7. She claims to have been active in her union and to have "acted on behalf of other teachers within the District who had complaints and grievances against the District." Id. at 8. In addition when Paula McGee, another teacher, brought an action against the School, Ms. Lybrook agreed to testify on her behalf and appeared on her witness list. Ms. McGee's case against the School settled before Ms. Lybrook could testify, however. See id.

On January 24, 1997 Defendant Candace Young, the principal at Ms. Lybrook's school, was alleged to have issued a Professional Development Plan for Ms. Lybrook.[1] I App. at 7, 9. That plan required Ms. Lybrook to "[s]trive to create an atmosphere that will nurture collaboration with all colleagues." Id. at 9. The plan also required her to "conduct affairs with a conscious concern for the highest standards of professional commitment." Id.

On March 14, 1997, Ms. Lybrook filed a grievance challenging the Professional Development Plan. See id. at 9. Ms. Young allegedly refused to consider the grievance and the Executive Director of Personnel for Farmington Municipal Schools, Defendant Floyd Kurley, informed Ms. Lybrook that her complaint was not a "grievable matter." Id. Ms. Lybrook then appealed the decision to the schools' superintendent, Defendant Tom Sullivan, who denied the grievance on April 17, 1997. See id. On May 30, 1997, Ms. Lybrook resigned from her position, allegedly because of what she considered to be the School's retaliation and harassment. See, e.g., id. at 7.

On September 29, 1997, Ms. Lybrook filed this action in the federal district court for the District of New Mexico, alleging that the School violated her rights of free speech and due process. On April 16, 1998, the School filed a motion to dismiss and a motion for summary judgment, both asserting qualified immunity as a defense. Appendix at 26,

---

[1] In her complaint, Ms. Lybrook refers to this document as a "Corrective Action Plan." However, as is made clear by a review of the record, the document is properly termed a "Professional Development Plan."

83.  The district court issued an order granting the School's motion to dismiss and denying as moot the motion for summary judgment.  Id. at 193-94.  Ms. Lybrook then filed this appeal.

## II

This court reviews de novo the district court's dismissal of an action pursuant to Fed. R. Civ. P. 12(b)(6).  See Pelt v. Utah, 104 F.3d 1534, 1540 (10th Cir. 1996).  When qualified immunity is raised in a Fed. R. Civ. P. 12(b)(6) motion, the plaintiff must carry the burden of establishing that the defendant violated clearly established law.  Breidenbach v. Bolish, 126 F.3d 1288, 1291 (10th Cir. 1997).  Thus, the plaintiff must "identify a clearly established statutory or constitutional right of which a reasonable person would have known, and then allege facts to show that the defendant's conduct violated that right."  Id.

## III

The first issue in this appeal is whether the district court erred by dismissing Ms. Lybrook's complaint on the ground that the School was entitled to qualified immunity. As we have held, "[u]nder the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of

which a reasonable person would have known." Prager v. LaFaver, 180 F.3d 1185, 1190 (10th Cir. 1999) (citation and internal quotation marks omitted) (alteration in original).

We scrutinize a dismissal on qualified immunity grounds using a two-step process. First, we examine whether the plaintiff has met its burden of "coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right." Baptiste v. J.C. Penny Co., Inc., 147 F.3d 1252, 1255 (10th Cir. 1998). Only when the plaintiff has satisfied this initial inquiry do we ask whether the right was clearly established at the time of the alleged conduct at issue. Id. at 1255 n.6; see also County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question.").

When making the second determination, deciding whether the right was clearly established at the critical time, we look to see if there was "a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." Murrell v. School Dist. No. 1, Denver, 186 F.3d 1238, 1251 (10th Cir. 1999) (citations and internal quotation marks omitted); see also Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992). However, for a right to be "clearly established," there need not be

binding precedent on "all fours" with the current case; instead, the unlawfulness must have been apparent in light of pre-existing precedent.  As the Supreme Court held in Anderson v. Creighton, 483 U.S. 635, 640 (1987):

> The right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful;  but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Thus, to survive the School's motion to dismiss, Ms. Lybrook must, as an initial matter, establish a constitutional or statutory violation, and only then will we consider whether the rule was clearly established at the time in question.  In this case, Ms. Lybrook alleges that the School violated her right under the First Amendment to be free from retaliation for exercising her right to freedom of speech.  We disagree and hold that her complaint, viewed charitably is insufficient to demonstrate such a violation.

**A**

A government employer cannot "condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Meyers, 461 U.S. 138, 142 (1983).  Thus, it is firmly established that "a public employer cannot retaliate against an employee for exercising [her] constitutionally protected right of free speech." Dill v. City of Edmond, 155 F.3d 1193, 1202 (10th Cir.

1998).

In determining whether a plaintiff has stated a First Amendment retaliation claim, we apply a four-part test. First, "we must determine whether the employee's speech involves a matter of public concern." Dill, 155 F.3d at 1201. If that is found to be the case, "we then balance the employee's interest in commenting upon matters of public concern 'against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Id. (quoting Pickering v. Board of Education, 391 U.S. 563, 568 (1968)). Third, if the balance "tips in favor of the employee, the employee must then show that the speech was a 'substantial factor or a motivating factor in the detrimental employment decision.'" Id. (quoting Gardetto v. Mason, 100 F.3d 803, 811 (10th Cir. 1996)). Fourth, if the plaintiff establishes that speech was such a factor, "the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." Id.

Ms. Lybrook alleges in her complaint that she exercised her First Amendment right to speak in three ways: (1) by acting on behalf of union members who filed grievances against the School; (2) by complaining to supervisors about the Professional Development Plan; and (3) by being listed as a witness in Paula McGee's action against the School. I App. at 8.

The parties vigorously dispute whether Ms. Lybrook's speech implicates a public concern, as required by the first prong of the test. We, however, need not resolve this

question here. Assuming, without deciding, that the speech alleged in Ms. Lybrook's complaint does involve public concern, we nonetheless conclude that she has failed to satisfy the requirement that she was subjected to an adverse or detrimental employment decision.

**B**

Ms. Lybrook contends that the Defendant Young's January 24, 1997 act of placing her on a Professional Development Plan, which required her to "[s]trive to create an atmosphere that will nurture collaboration with all colleagues" and to "conduct affairs with a conscious concern for the highest standards of professional commitment," constitutes an "adverse employment action." She argues that in retaliation for her speech, the School harassed her "through the mechanism of the [Professional Development Plan]." I App. at 10. Plaintiff Lybrook's complaint also avers, id. at 9, that on March 31, 1997 Defendant Young required Plaintiff to begin meeting with her every Monday morning and told Plaintiff that 4 teachers, unnamed, had complained about Lybrook. We conclude, however, based on our review of the complaint, that these acts are insufficient to demonstrate adverse employment action as is required to establish a First Amendment retaliation violation.

Our most recent decision on point is Schuler v. City of Boulder, 189 F.3d 1304, 1309-10 (10th Cir. 1999). In that opinion we upheld a denial of summary judgment for the defendant City and supervisors of a recreation center employee. That employee,

- 8 -

Schuler, had become concerned about whether a janitor was spying on women from a crawl space above the women's locker room. One supervisor was told by Schuler about this problem, and the supervisor called the police. That supervisor instructed Schuler not to discuss her suspicions with anyone else, including Schuler's supervisor, Quiller. Charges were not filed against the janitor, although a police investigation continued. Schuler expressed concern over Quiller's objectiveness in handling the investigation because of Quiller's personal friendship with the janitor.

Although the janitor was suspended for two weeks without pay, Schuler expressed dissatisfaction with the handling of the janitor's conduct in a seven page memorandum. Schuler also discussed the incident concerning the janitor with other employees of the center at a farewell party. Following the party, Schuler received a written reprimand and other allegedly retaliatory actions were taken against Schuler by removing job duties from Schuler, specifically important payroll functions; by giving Schuler a low score on her performance evaluation, below that received by the janitor while he was suspended; and by involuntarily transferring Schuler to another recreation center.

After analyzing Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990), and Dill v. City of Edmond, 155 F.3d 1193 (10th Cir. 1998), we upheld the denial of summary judgment for the defendant City and supervisors of Schuler. We held that Schuler's free speech right under the First Amendment was sufficiently established that qualified immunity was not available. We noted that Rutan and Dill had made clear that there were

deprivations less harsh than dismissal which nevertheless violated a public employee's rights under the First Amendment.[2] Schuler, 189 F.3d at 1309. We were convinced that the defendants' alleged conduct in retaliation for Schuler's protected speech was actionable and that the qualified immunity defense had been properly denied.

In the instant case, we are persuaded that the personnel action taken against Ms. Lybrook did not rise to the level of an adverse personnel action such as that found to exist in Schuler. Although Schuler held that employers' acts short of dismissal may be actionable as First Amendment violations, we have never ruled that all such acts, no

---

[2]In Rutan v. Republican Party of Illinois, 497 U.S. 62, 75 (1990), the Supreme Court rejected the Seventh Circuit's position that the First Amendment is only violated in cases where employment decisions are the "substantial equivalent of a dismissal." This is because "there are deprivations less harsh than dismissal that nevertheless press state employees and applicants to conform their beliefs and associations to some state-selected orthodoxy." Id.

Although the Court stated that the First Amendment protects an employee from "an act of retaliation as trivial as failing to hold a birthday party for a public employee," id. at 76, n.8, this has been interpreted as non-controlling dicta. See, e.g., Acosta-Orozco v. Rodriguez de Rivera, 132 F.3d 97, 101 n.5 (1st Cir. 1997) (holding that Rutan's footnote 8 is "colorful rhetoric" that does not foreclose rules that allow public employers to take actions which fall short of demotions or transfers); Pierce v. Texas Dep't of Criminal Justice, Institutional Div., 37 F.3d 1146, 1150 n.1 (5th Cir. 1994) ("We choose not to read the Supreme Court's dicta literally; rather, we apply the main analysis of Rutan to retaliation claims and require more than a trivial act to establish constitutional harm."); see also Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) (holding that it "would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise. . .") (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)). But see Tao v. Freeh, 27 F.3d 634, 639 (D.C. Cir. 1994) (holding that "the First Amendment protects government employees from even an act as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights") (internal quotation omitted and alteration in original).

matter how trivial, are sufficient to support a retaliation claim.  In other words, <u>Schuler</u>

left open the possibility that "there may be some minor adverse actions that would not

constitute First Amendment violations."  <u>Colson v. Grohman</u>, 174 F.3d 498, 511 (5th Cir.

1999); <u>see</u> <u>also</u> <u>Suppan</u>, 203 F.3d at 235.

We believe that this is the case here.  The only retaliatory actions that Ms. Lybrook

has alleged in her complaint are that Defendant Young on January 24, 1997 issued a

Corrective Action Plan [Professional Development Plan] which required Plaintiff to

"[s]trive to create an atmosphere that will nurture collaboration with all colleagues" and

to "conduct affairs with a conscious concern for the highest standards of professional

commitment," Complaint, ¶17, I App. at 9, and that on March 31, 1997 "Defendant

Young required Plaintiff to begin meeting with her every Monday morning and advised

Plaintiff that four teachers had complained about Plaintiff.  Defendant Young again

refused to identify the accusers or the nature of the problems alleged."  Complaint, ¶18, I

App. at 9.[3]

Unlike in <u>Schuler</u>, where our review of the record revealed that the defendant-

_____

[3]In the Appellant's Brief in Chief at 24 it is stated that: "As for the adverse
employment action, both parties have agreed that the adverse employment action in
question is the 'PDP' given to the Plaintiff by Defendant Young."  In light of the
additional allegation about the Monday morning meetings required of Plaintiff Lybrook,
noted above, we will consider the actions of Defendant Young both in connection with
the PDP and the Monday meetings.  Nevertheless we are satisfied that even taken
together, the showing in Plaintiff's allegations in her complaint fails to demonstrate
adverse personnel actions cognizable as a First Amendment violation.

employer took serious actions against its employee, albeit ones falling short of full termination (removing important job responsibilities from the plaintiff, issuing a formal written reprimand that referred to her speech, giving a low score on her performance evaluation, and involuntarily transferring her to a different facility) here our review of Ms. Lybrook's complaint reveals allegations that are manifestly less grievous in nature. Thus, while the Professional Development Plan and the Monday morning meetings may have been unwelcomed to Plaintiff Lybrook, we conclude that they are of insufficient gravity to premise a First Amendment violation.

## IV

Ms. Lybrook argues that the district court erred by dismissing her procedural due process claim. I App. at 11. We disagree. A procedural due process claim must be based on a showing that the state deprived the plaintiff of a protected property or liberty interest. Workman v. Jordan, 32 F.3d 475, 479-80 (10th Cir. 1994). Review of Ms. Lybrook's complaint reveals no such showing; the complaint neither shows that the School deprived her of an interest in continued employment, nor that it damaged her reputation through stigmatization. Id. Consequently, we find no error in the district court's dismissal of her procedural due process claim.

## V

Ms. Lybrook argues that the parties attached documents to the Fed. R. Civ. P. 12(b)(6) moving papers and therefore the district court erred by not converting the Fed. R. Civ. P. 12(b)(6) motion into a summary judgment motion. See Appellant's Brief in Chief 33-34. According to Ms. Lybrook, the error warrants reversal because the district court referred to those documents during the hearing on the motion to dismiss. See id. at 34, 36-37. Ms. Lybrook also argues that the district court abused its discretion by dismissing the action with prejudice since in her estimation this court's precedent dictates that when a defendant asserts a qualified immunity defense, dismissal without prejudice is ordinarily warranted. See id. at 34-35 (citing Breidenbach, 126 F.3d at 1293).

We review the district court's procedural rulings to determine if the district court abused its discretion. See, e.g., Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1377 (10th Cir. 1996); see also United States v. Pina, 974 F.2d 1241, 1243 (10th Cir. 1992) ("We review the dismissal with prejudice under an abuse of discretion standard.").

We do not agree with Ms. Lybrook's assessment. Contrary to her assertion that the district court abused its discretion by failing to convert the Fed. R. Civ. P. 12(b)(6) motion into a summary judgment motion when the parties attached documents to their motions, district courts have discretion to accept or reject attached documents. Lowe v. Town of Fairland, 143 F.3d 1378, 1381 (10th Cir. 1998) ("[C]ourts have broad discretion in determining whether or not to accept materials beyond the pleadings."); see also Prager v. LaFaver, 180 F.3d 1185, 1188 (10th Cir. 1999) ("Here, the district court acted well

within its discretion in declining to consider the documents attached to Mr. LaFaver's motion to dismiss."). Therefore, the mere fact that the parties provided documents to the district court did not require the district court to rely on those documents.

Ms. Lybrook argues, however, that the district court referenced the documents during the hearing on the motion to dismiss. See Appellant's Brief in Chief at 37. Although she is correct that the district court did read those documents, see II App. at 215-16 (citing Defendants' affidavit), she has nonetheless failed to demonstrate that the district court relied on them when ruling on the motion. Lowe, 143 F.3d at 1381 ("Defendants have not demonstrated that the district court relied on matters outside of the pleadings when ruling on the motion to dismiss."). In the circumstances, we cannot say that the district court abused its discretion.

Nor is Ms. Lybrook aided by reliance on our decision in Breidenbach. Contrary to her suggestion, we did not there hold that dismissal with prejudice may not be warranted when a defendant asserts a qualified immunity defense. See, e.g., Lutz v. Weld County School Dist. No. 6, 784 F.2d 340, 342 (10th Cir. 1986) ("The Harlow Court clearly intended to create limits for qualified immunity that would promote a decision about availability of the defense in a very early stage of most lawsuits."); see also Migneault v. Peck, 158 F.3d 1131, 1139 (10th Cir. 1998) ("Qualified immunity is an immunity from suit rather than a mere defense to liability. The doctrine allows courts to expeditiously weed out suits against government officials which fail to establish a violation of a clearly

established right prior to imposing the burdens of discovery and litigation.") (citation and internal quotation marks omitted).  In sum, we are not persuaded that Plaintiff Lybrook has shown an abuse of discretion in the dismissal with prejudice, particularly in light of the fact that "both parties have agreed that the adverse employment action in question is the 'PDP' given to the Plaintiff by Defendant Young."  Appellant's Brief in Chief at 24.

Accordingly, the district court's dismissal of the action with prejudice is AFFIRMED.