F I L E D
United States Court of Appeals
Tenth Circuit

MAR 28 2003

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RANDALL E. LUNOW; TERRY G.
WEAVER; RICKY G. HENSON;
MELVIN Y. HANSON, JR.,

        Plaintiffs - Appellants,

    v.

CITY OF OKLAHOMA CITY, a
municipality; GARY MARRS,
individually and in his official
capacity,

        Defendants - Appellees,

  and

INTERNATIONAL ASSOCIATION
OF FIRE FIGHTERS, AFL-CIO,

        Amicus Curiae.

No. 02-6066
(D.C. No. CIV-01-185-C)
(W.D. Oklahoma)

**ORDER AND JUDGMENT**  *

Before **BRISCOE** , **BALDOCK** , and **HARTZ** , Circuit Judges.

---

    *This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiffs Randall Lunow, Melvin Hanson, Ricky Henson, and Terry Weaver are current and former firefighters with Defendant City of Oklahoma City (City) and activists in the firefighters' union. They brought this action under 42 U.S.C. § 1983, alleging that the City and its fire chief, Defendant Gary Marrs, retaliated against them because of their speech and union activity, in violation of their First Amendment rights to free speech and free association (as incorporated into the Fourteenth Amendment, *see DeJonge v. Oregon*, 299 U.S. 353 (1937)). The district court granted summary judgment in favor of Defendants, and Plaintiffs appeal. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I. **BACKGROUND**

Much is undisputed. Plaintiffs all began their service with the Oklahoma City Fire Department (Department) in the late 1970s. Plaintiffs Lunow, Henson, and Weaver are currently employed by the Department and hold the rank of major. Plaintiff Hanson retired from the Department as a major in April 2000. Defendant Marrs served as fire chief of the Department from 1993 until his retirement in January 2002.

Of the 946 City firefighters, 932 are dues-paying members of the International Association of Firefighters, Local 157. Major Lunow's union activism began in the mid-1980s. He served as a steward for ten years, and as a

trustee and member of the union's executive board from 1995 to 1999. Major Henson has been active in the union since 1983, serving as its public relations director from 1983 to 1986. Major Weaver's union activity began in 1984, and includes service as a district vice president from 1984 to 1986, and as chairman of the union's public relations committee. Major Hanson became active in the union in 1989, serving as a trustee from 1990 to 1994, and as a district vice president. From 1991 to 1994, he was a member of the team negotiating the Collective Bargaining Agreement (CBA) with the City. In addition, from 1990 to 1996 he wrote for two local union publications, the *Bugle* and the *Dispatch*, in which he was often critical of Chief Marrs and others in the Department's administration.

All four Plaintiffs also served as union representatives on the Department's Safety and Health Committee. In addition to their other union activities, Plaintiffs have worked on various political campaigns endorsed by the union.

Plaintiffs contend that they have been subjected to involuntary transfers to less desirable fire stations as a result of their union-related speech and activity. Their main complaint, however, is that they have been denied promotions to the position of district chief because they are union activists. Since 1994, Majors Lunow, Henson, and Weaver have each unsuccessfully attempted to become one of the 18 district chiefs in the Department's suppression division. In 1994 and

1997, Major Hanson sought but failed to attain promotion to the position of district chief in the Department's support division.

Unhappy with their failure to advance further in the Department, Plaintiffs filed this § 1983 lawsuit in January 2001. Defendants jointly moved for summary judgment. The district court granted the motion, holding that Plaintiffs' speech and association claims were identical, and that neither was a matter of public concern. This appeal followed.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. *Wilson v. Meeks*, 98 F.3d 1247, 1252 (10th Cir. 1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a summary judgment motion, we view the evidence in the light most favorable to the non-moving party. *Wilson*, 98 F.3d at 1253. The non-moving party, however, may not "rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). Instead, the non-moving party must set forth "specific facts"

showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## III. FREE SPEECH CLAIMS

Plaintiffs allege that Defendants retaliated against them for exercising their First Amendment right to free speech. "Because this is an employment retaliation case asserting a First Amendment right, our analysis of whether [Plaintiffs have] sufficiently alleged that Defendants violated [their] constitutional rights involves four steps." *Butler v. City of Prairie Vill.*, 172 F.3d 736, 745 (10th Cir. 1999) (internal quotation marks omitted). The first is to determine whether each plaintiff's speech involved a matter of public concern. *Id.* at 745-46. The second is to "balance the interests of the employee in making the statement against the public employer's interests in the effective and efficient fulfillment of its responsibilities to the public." *Id.* at 746 (internal quotation marks omitted). Third, "if the balance tips in favor of the plaintiff, then he must show that the protected speech was a motivating factor in the decision." *Id.* (internal quotation marks omitted). Finally, if the plaintiff makes this showing, "the burden then shifts to the employer to show by a preponderance of the evidence that it would have reached the same decision in the absence of the protected activity." *Id.* (internal quotation marks omitted).

In their district court brief responding to the motion for summary judgment, Plaintiffs generally described their union activities and argued that those activities were a matter of public concern. Aplts' App. at 416. But they failed to point to any particular instance of speech and argue that it was a matter of public concern. As a result, the district court found itself "challenged to engage in the public concern analysis because Plaintiffs have not identified any verbal or written speech upon which it can make a determination." Aplts' App. at 603. (Dist. Ct. Order dated Jan. 31, 2002, at 11). Going beyond the call of duty, the court examined the record, including Plaintiffs' depositions and certain articles written by Major Hanson that were submitted as part of Defendants' motion for summary judgment, and concluded that any speech upon which Plaintiffs might rely was not a matter of public concern. It therefore dismissed their speech claims.

In their brief on appeal, Plaintiffs identify the following instances of speech that allegedly led to retaliation: (1) their "speech while representing union interests on the Safety and Health Committee," Aplts' Opening Br. at 14; (2) their "work on political and election campaigns," *id.*; (3) Major Lunow's "speech regarding Marrs' anti-union animus" and his participation in two lawsuits filed against the City, *id.* at 12, 13; and (4) Major Hanson's articles in union publications critical of Defendants. We consider each in turn.

A. <u>Safety and Health Committee</u>

All four Plaintiffs allege that their "speech" as union representatives on the Safety and Health Committee related to a matter of public concern, because this committee "addresses issues dealing with the safety of firefighters while performing their job." Aplts' Opening Br. at 7. None of the Plaintiffs, however, point to any particular *statement* that he made as a member of the committee. The only evidence in the record relating to the work of the Safety Committee comes from Major Weaver, who served on the committee for six years between 1984 and 1998. He testified that Safety Committee discussions with management often became "heated," Aplts' App. at 476, particularly with regard to the "water quality issue at Station 28," and issues relating to "bunker equipment or protective clothing" and the use of "hand lines." *Id.* at 477. But the record does not indicate the content of these discussions, when they were held, or which of the Plaintiffs, if any, spoke out on these issues.

Even assuming that the subject matter of the committee's work touched on a matter of public concern, Plaintiffs' evidence is insufficient to demonstrate protected speech under the First Amendment. "In order for a public employee's speech to be of public concern, . . . it is not always enough that its *subject matter* could in [certain] circumstances, [be] the topic of a communication to the public that might be of general interest. What is *actually said* on the topic must itself be of public concern." *Koch v. City of Hutchinson*, 847 F.2d 1436, 1445 (10th Cir.

1988) (en banc) (internal quotation marks omitted; brackets in the original; second emphasis added). Here, no Plaintiff has presented evidence of anything that he *actually said* while on the Safety Committee. Thus, Plaintiffs cannot rely on their participation on the Safety Committee to support their free speech claims.

### B. Political campaigns

Next, all four Plaintiffs contend that their work on union-supported political campaigns was a matter of public concern. Again, Plaintiffs decline to offer specifics or direct us to any in the record. But even assuming that their purported political speech was a matter of public concern, it cannot form the basis of their speech claims, because Plaintiffs have pointed to nothing in the record indicating that their political activity was a "motivating factor" behind any alleged adverse action. *Butler*, 172 F.3d at 746 (a plaintiff must show that his "protected speech was a motivating factor" behind the challenged decision). Indeed, the record refutes any such notion. Each Plaintiff testified that no one from the Department ever told him that he could not participate in political campaigns, or told him that he must support or oppose a particular candidate or position. Major Weaver admitted that he was unaware of any adverse job action taken in response to his participation in union-endorsed campaigns. All Major Lunow could offer is that he "just know[s]" that he has suffered retaliation for his political activity, but he could not explain how. Aplts' App. at 506. This is

plainly insufficient to overcome Defendants' motion for summary judgment.

Once "a properly supported motion for summary judgment is made, the adverse

party must set forth *specific* facts showing that there is a genuine issue for trial."

*Liberty Lobby*, 477 U.S. at 250 (internal quotation marks omitted; emphasis

added).

    C.  <u>Major Lunow's speech</u>

Major Lunow offers as examples of protected speech (1) his criticism of

Chief Marrs' anti-union animus and refusal to promote union leaders, and (2) his

service "on behalf of the union as a named plaintiff in a lawsuit against the City

regarding issues of overtime pay and misappropriation of sales tax." Aplts'

Opening Br. at 13. We can readily dispose of the first claim. The assertion that

Major Lunow spoke out about Chief Marrs' purported union animus is entirely

unsupported by reference in Plaintiffs' briefs on appeal to anything in the record,

and we thus decline to consider it. *See SEC v. Thomas*, 965 F.2d 825, 827 (10th

Cir. 1992) (the court will not sift through the record in search of support for a

party's contention of error).

Although Plaintiffs do not further describe Major Lunow's lawsuit against

the City or provide supporting documentation, they do at least cite to the portion

of his deposition where it is discussed. The record indicates that Major Lunow

was actually a plaintiff in *two* separate lawsuits: (1) a 1986 lawsuit against the

City to collect Fair Labor Standards Act (FLSA) overtime pay awarded to firefighters in an arbitration, and (2) a 1992 lawsuit, which he admits was a "friendly" suit to settle a dispute between the City and the union concerning the spending of a dedicated sales tax. Neither lawsuit supports his free speech claim.

With respect to the 1986 lawsuit (which predated Chief Marrs' tenure by seven years), we question whether an FLSA lawsuit is a matter of public concern. *See Tiltti v. Weise*, 155 F.3d 596, 602 (2d Cir. 1998) (lawsuit brought by plaintiff on behalf of other employees regarding pay under the FLSA is matter of "personal interest" and not "public concern"). But even assuming that it is, Plaintiffs direct us to nothing in the record (other than Major Lunow's own unsupported speculation) indicating hostility to the suit, or the plaintiffs in the suit, from Department leaders. Nor do they point to an adverse action against Major Lunow that can be reasonably tied to his participation in the litigation. As for the 1992 lawsuit, Plaintiffs do not explain why Major Lunow would suffer retaliation for participation in what he acknowledges was a "friendly" lawsuit. Accordingly, his speech claim fails.

D. <u>Major Hanson's articles</u>

Major Hanson identifies two instances of speech which he contends are matters of public concern: (1) an article (or articles) that he wrote in the *Dispatch* regarding Chief Marrs' alleged anti-union animus, in which he claims to

have "spoke[n] out against Marrs and other supervisory personnel of the Fire Department regarding the illegal conduct of refusing to promote firefighters because of their union activity," Aplts' Opening Br. at 12; and (2) articles that he wrote in the *Bugle* and the *Dispatch* criticizing Chief Marrs and the City "for administrative decisions regarding budget cuts, reorganizations, and negotiations over the Collective Bargaining Agreement." *Id.* at 13. In his deposition Major Hanson testified that he suffered two adverse actions as a result of the writings: (1) a one-shift transfer from Station 8 to Station 22 in 1993, and (2) the denial of a promotion to Chief Training Officer at some unspecified time in 1994.

The record contains a copy of the *Dispatch* (dated September 1994) discussing contentious CBA negotiations, and a copy of the *Bugle* (dated March 1996) discussing proposed budget cuts and a contemplated reorganization of the Department. The record does not, however, contain a copy of the *Dispatch* issue in which he allegedly criticized Chief Marrs for refusing to promote union leaders. Nor is there any evidence in the record regarding the date of the issue.

To establish causation in a freedom-of-speech case, a plaintiff must—at a minimum—present evidence that his protected speech preceded the adverse actions alleged. Plaintiffs have failed to meet that minimal burden. First, it is clear that the 1996 *Bugle* article could not have motivated either of the adverse actions cited by Major Hanson, since the article was written *after* both the 1993

transfer and the 1994 non-promotion occurred.  Similarly, because Plaintiffs have failed to come forward with evidence regarding the date of the *Dispatch* article in which Major Hanson purportedly criticized Chief Marrs for refusing to promote union leaders, we cannot determine whether that article predated either of the adverse actions alleged.  Finally, while it is possible that the September 1994 *Dispatch* article preceded Major Hanson's 1994 non-promotion, Plaintiffs do not specify in which month that non-promotion occurred, and we are left to speculate whether the article preceded his failure to be promoted.  This is insufficient evidence to overcome a motion for summary judgment.

In summary, the district court properly granted summary judgment on Plaintiffs' free speech claims.

## IV.  ASSOCIATION CLAIMS

Plaintiffs contend that in retaliation for their union activity, Defendants involuntarily transferred them to less desirable fire stations and denied them promotions to the rank of district chief.  They contend that this retaliation violated their First Amendment right to associate freely with their union.  The district court granted summary judgment to Defendants, ruling that Plaintiffs' free association claim was identical to their free speech claim and that their alleged association was not a matter of public concern.

The parties devote much of their attention on appeal to arguing whether the *Pickering/Connick* "public concern" test developed in the free speech context, *see Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Connick v. Myers*, 461 U.S. 138 (1983), applies to public employee freedom-of-association claims. As the district court noted, courts are split as to whether the "public concern" analysis governs freedom-of-association claims, *compare, e.g., Griffin v. Thomas*, 929 F.2d 1210, 1214 (7th Cir. 1991) (public concern test applies to association claims); *Boals v. Gray*, 775 F.2d 686, 692 (6th Cir. 1985) (same), *with Boddie v. City of Columbus*, 989 F.2d 745, 747 (5th Cir. 1993) (public concern test inapplicable to association claims); *Hatcher v. Bd. of Pub. Educ. & Orphanage*, 809 F.2d 1546, 1558 (11th Cir. 1987) (same); and this circuit has not squarely decided the issue, s*ee Schalk v. Gallemore*, 906 F.2d 491, 498 n.6 (10th Cir. 1990) (applying public concern test to identical free speech/association claims in context of case before it, but noting that the public concern test "may be an inapt tool of analysis" in other public employee/free association contexts).

We need not decide this interesting issue here, however. Even assuming that Plaintiffs' union activity was a matter of public concern, to prevail under their free association claim, Plaintiffs must establish causation—that is, that their union activity was a "motivating factor" behind the adverse employment actions that they allege. *Saye v. St. Vrain Valley Sch. Dist.*, 785 F.2d 862, 867 (10th Cir.

-13-

1986). Although the district court based its decision on public concern grounds and did not reach the causation issue, we may affirm the judgment below "on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). Contrary to Plaintiffs' belief, *see* Reply Br. at 8, Defendants can raise an alternative ground for affirmance in their answer brief, without the need for filing a cross-appeal. *See Tinkler v. United States ex rel. FAA*, 982 F.2d 1456, 1461 n.4 (10th Cir. 1992). As we now proceed to explain, summary judgment was proper because Plaintiffs have failed to present sufficient evidence to create a genuine issue of fact regarding whether their union activity was a motivating factor behind their transfers and their failures to be promoted.

We begin our review of the causation issue by discussing purported evidence of anti-union animus not directly involving action against any of the Plaintiffs: (1) general allegations of animus set forth in affidavits of five union activists who are not plaintiffs in this lawsuit; (2) a further allegation in one of the affidavits that the activist was himself transferred in retaliation for his union activity; and (3) alleged comments attributed to Chief Marrs. We conclude that none of this has probative value, except that one comment provides some, although minimal, evidence of animus. We then examine the various alleged

-14-

adverse actions to determine whether there is sufficient additional evidence to support a finding of causation. Our conclusion is that such evidence is absent.

A. Non-specific "evidence" of anti-union animus

The affidavits from the five activists assert, in effect, that union activity is a detriment to firefighters' careers in the Department. But these assertions are entitled to no weight on summary judgment, because they are conclusory, without providing any factual basis for the conclusions. "To survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (internal quotation marks omitted); *see also Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994) ("Under Fed. R. Civ. P. 56(e), only statements made on personal knowledge will support a motion for summary judgment; statements of mere belief must be disregarded." (internal quotation marks omitted)).

The affidavit of the transferred activist—Brad Dunlap—is likewise too short on facts to be probative. Mr. Dunlap stated that in 1998 he was involuntarily transferred to a different fire station shortly after he complained about his district chief's refusal to allow him to attend a union meeting. There is no further evidence in the record about this incident, such as whether he had a

right to leave work to attend the meeting or whether the transfer was out of the ordinary or to a less attractive position. Nor is there any evidence of involvement by Chief Marrs. Mr. Dunlap's affidavit is thus not probative of anti-union animus.

As for the comments that Plaintiffs point to as proof of Chief Marrs' anti-union bias, they were allegedly made in the course of three separate incidents involving Major Lunow, Major Hanson, and another union activist, Steve Lumry. First, in 1995 Major Lunow reported to Department management and union officials that a district chief was improperly giving certain firefighters test materials to prepare for the district chief selection process. Major Lunow testified that an Assistant Chief relayed a message from Chief Marrs that Lunow's reporting such conduct was a "career decision." There is no indication, however, that Chief Marrs' reference to a "career decision" was related to Major Lunow's role as a union leader, and Plaintiffs do not explain how it was.

Next, Plaintiffs make a passing reference in their reply brief to an incident involving Major Hanson, who, while suffering from post-traumatic stress disorder, requested a transfer to dispatch. According to Plaintiffs, one of Chief Marrs' assistants denied the request and sent Major Hanson a message that he did not want dispatch filled with "head cases and cripples." Aplts' Reply Br. at 11. Major Hanson assumed that the message came from Chief Marrs. Yet this

comment, while repugnant, appears to be a reference to Major Hanson's medical condition, not his union activity. Plaintiffs do not explain how the comment demonstrates anti-union animus.

The third incident is more substantial. An affidavit of Steve Lumry, a union activist in the Department, states that in 1996 or 1997 Chief Marrs made comments to him at a meeting "to the effect that some of [Mr. Lumry's] activities associated with the union may be the reason that [he] hadn't been promoted yet." Aplts' App. at 550. Major Lunow, who was present during this conversation, testified that Chief Marrs asked Mr. Lumry, "[D]o you think would you be an officer today if you hadn't been a union officer?" *Id.* at 524. This statement could reasonably be construed as an indication that Chief Marrs did not favor the promotion of, or was otherwise hostile towards, union leaders. But this isolated comment (or question) to a non-plaintiff during the course of his nine years as chief is not sufficient in itself to sustain a claim that anti-union animus motivated any particular action taken by Chief Marrs against any of the Plaintiffs. In a similar context we wrote:

> [A stray remark] is insufficient to create a jury issue in an employment discrimination case. Age-related comments referring directly to the plaintiff can support an inference of age discrimination, but isolated or ambiguous comments may be, as here, too abstract to support such an inference. . . . A plaintiff must demonstrate a nexus exists between the allegedly discriminatory statement and the company's termination decision . . . .

-17-

*Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000) (internal

quotation marks, brackets, and citations omitted); *see Cone v. Longmont United*

*Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) ("Isolated comments, unrelated to

the challenged action, are insufficient to show discriminatory animus in

termination decisions.").

Because this evidence has so little probative value, we now proceed to

determine whether evidence specific to the alleged adverse actions against

Plaintiffs can fill the gaps in their proof of causation.

B.  Causation evidence specific to alleged adverse actions

Plaintiffs claim to have suffered adverse employment actions when (1) each

Plaintiff was involuntarily transferred to a less desirable fire station; (2) Majors

Lunow, Henson, and Weaver were denied promotion to district chief in the

Department's suppression division; and (3) Major Hanson was not promoted to

district chief in the Department's support division.  We discuss in turn the

evidence of causation with respect to each of these alleged adverse actions.

1.  *Involuntary transfers*

Each plaintiff alleges that he was retaliated against by being subjected to

involuntary "transfers to less desirable fire stations."  Aplts' Opening Br. at 8.

The allegations, however, are unsupported by competent evidence.

-18-

First, Major Weaver's contention that he has been involuntarily transferred is entirely unsupported by the record, so his claim must fail. *See Thomas*, 965 F.2d at 827.

As for Major Henson, he testified that in late 1994 or early 1995, he was given an involuntary "special assignment to training," and that this transfer was retaliatory. Aplts' App. at 532, 533. But Plaintiffs point to nothing in the record linking this transfer to Major Henson's role as a union leader. On the contrary, Major Henson testified that Deputy Chief Mike Webb ordered the transfer because Henson complained to his district chief that Webb was unfairly promoting his "close associates" over Henson. *Id.* at 533. Accordingly, the claim fails.

Major Lunow's allegations of retaliatory transfers are similarly flawed. He testified in general terms about a number of transfers to various stations between 1985 and 1995. According to Major Lunow, some of these transfers he requested, some he did not, some were agreeable, and some were not, because they were to stations "out of the mainstream" that did not have the best trucks or equipment. *Id.* at 503, 504. Again, however, Plaintiffs point to nothing in the record indicating that the transfers were retaliation for Major Lunow's union activity, apart from Lunow's own conclusory testimony that it is "commonly known" that union officials get sent to stations "out of the mainstream." Aplts' App. at 502.

There is insufficient evidence of causation to withstand summary judgment on this claim.

Finally, Major Hanson contends that a 1993 involuntary transfer for one shift, from Station 8 to Station 22, was retaliation for his work on the *Dispatch*. We question whether a one-shift transfer constitutes an adverse action, particularly where, as here, there is no evidence in the record regarding why the transfer was undesirable. *See Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1340 (10th Cir. 2000) ("there may be some minor adverse actions that would not constitute First Amendment violations" (internal quotation marks omitted)). In any event, there is no evidence of causation. All Major Hanson offered in support of this claim was speculation that the transfer was retaliation for his work on the *Dispatch* because of its "timing," since "[j]ust out of the blue, [the transfer] came down." Aplts' App. at 444. He testified that "maybe that [one-shift transfer] was the parting shot. I don't know." *Id.* Such "evidence" cannot support a finding of causation.

Because Plaintiffs have failed to provide evidence that their union activity was the motivation for the allegedly retaliatory transfers, we affirm the district court's grant of summary judgment on these claims.

    2. *Non-promotion to district chief in suppression division*

We now address the claims by Majors Lunow, Henson, and Weaver that they were denied promotion to the position of district chief in the Department's suppression division because of their union activity. The Collective Bargaining Agreement (CBA) between the union and the City sets forth the requirements for promotion to that position. Before examining those requirements, however, we consider Plaintiffs' contention that there is also a de facto requirement that a firefighter must first serve as a "rideout" to a district chief in order to be promoted to district chief in suppression.

### a. The rideout "requirement"

A rideout is an assistant to a district chief and is in charge of the fire district when the district chief is unavailable. Plaintiffs allege that because of their union activity, they have been denied the opportunity to become rideouts, which in turn has resulted in their exclusion from the promotion process for the position of district chief in the suppression division, regardless of anything contained in the CBA. (Plaintiffs do not allege that service as a rideout is a prerequisite to promotion to district chief in the Department's support division. Because Major Hanson sought promotion only within the support division, he does not base his claim on his failure to be appointed a rideout.) Plaintiffs assert that certain rideouts are groomed for the position of district chief, and improperly receive special training and testing materials not provided to other firefighters.

They contend, and Defendants apparently do not dispute, that every firefighter who has been promoted to the position of district chief in suppression during Chief Marrs' tenure has served as a rideout at one time in his career.

What Plaintiffs have failed to do, however, is present any evidence that their union activity played a role in their failure to be selected as rideouts. To begin with, Plaintiffs have failed to present competent evidence that Chief Marrs played a role in their non-selection. Under the CBA the Department's district chiefs have the right to select their own rideouts. As evidence that Chief Marrs actually selects which firefighters will be rideouts, Plaintiffs point only to the previously mentioned affidavits of other union activists in the Department. Each affidavit states, with minor variations, that "to the best of [the affiant's] recollection and belief. . . [he has] observed circumstances establishing that" Chief Marrs gives "instructions or input or approval" to district chiefs regarding whom to select as rideouts. Aplts' App. 547; *see also* App. 544; 545; 549; 551. Such conclusory statements, unsupported by facts, must be disregarded on summary judgment. *Murray*, 45 F.3d at 1422; *Tavery*, 32 F.3d at 1427 n.4.

Nor is there any other evidence connecting Plaintiffs' union activity to their failure to be appointed rideout. Plaintiffs' testimony on the matter is limited to unsupported conclusions. Major Henson noted an occasion on which a district chief reneged on a promise to select him as a rideout, and then speculated, "I

-22-

figure[d] it's just like a lot of the other things, you know. The guy is a union guy, just overrule him." Aplts' App. at 536-37. Major Weaver testified that he had expressed an interest to various district chiefs about becoming a rideout, but was never selected or given a reason why. He concluded that he was not selected because of his union activity. Likewise, Major Lunow offered his own unsupported conclusion that he was not chosen because he was active in the union.

Because they did not offer competent evidence that their union activity was a motivating factor behind their failure to be selected as rideouts, Majors Lunow, Henson, and Weaver cannot rely on that non-selection as a basis for their freedom-of-association claims.

b. Promotion under the CBA

Having removed the rideout element from the equation, we now turn to the requirements under the CBA for promotion to the position of district chief in suppression. Under the CBA, to be eligible for the promotion, a firefighter must hold the rank of major, have 15 years' experience in the Department, and (1) take a 100-question written examination; (2) score in the top 12 on the written examination, which qualifies the applicant to advance to the assessment center for evaluation by a panel of interviewers; and (3) perform well enough at the

assessment center to be among the small number of candidates who proceed to the final stage of the competition, an interview with the fire chief.

With this background, we can readily dispose of the claims by Majors Henson and Weaver that their failure to be promoted was retaliation for their union activity. Major Henson took the written test on two occasions but never scored high enough to advance to the assessment center. Major Weaver advanced to the assessment center once on four attempts, but did not perform well enough to advance to the interview stage. Thus, neither Major Henson nor Major Weaver was eligible to be promoted to district chief in suppression. We note that they make no allegation that they were given improperly low scores on the written examination or at the assessment center in retaliation for their union activity. Accordingly, their union activity could not have been a motivating factor in Chief Marrs' failure to promote them, and the district court properly granted summary judgment on their freedom-of-association claims.

Major Lunow presents a slightly different situation. On four occasions he failed to progress beyond the assessment-center stage. Like Majors Henson and Weaver, he makes no allegation that the scoring of the preliminary examinations was retaliatory. Thus, Major Lunow's failure to be promoted on these four occasions was the result of his ineligibility for the position under the CBA, not his union activity.

Unlike Majors Henson and Weaver, however, Major Lunow did advance to the final stage on one occasion—in 1998, when he competed for the position of Special Teams Coordinator, a district chief position in the suppression division. Finishing third at the assessment center, he was one of four candidates whose names were submitted to Chief Marrs for consideration. Major Lunow does not contend that the scoring was retaliatory. Chief Marrs selected Cecil Meeks, who tied for the highest score at the assessment center, had been a rideout, and was not active in the union. Major Lunow testified that he believed that Mr. Meeks was as qualified as he was for the promotion, but that Chief Marrs' failure to select him was retaliation for his union activity.

To overcome a motion for summary judgment, however, Major Lunow must support that belief with competent evidence. One potential source is direct evidence. *See Quinn v. Vill. of Elk Grove Bd. of Fire & Police Comm'rs*, No. 01-C-8504, 2002 WL 31875464, at * 5 (N.D. Ill. Dec. 24, 2002) (denying summary judgment on plaintiffs' freedom-of-association claim because fire chief's written evaluation demonstrated that he took plaintiffs' union leadership into account when he interviewed them for a promotion). But there is no direct evidence that Chief Marrs considered Major Lunow's union activity when he declined to promote him.

Instead, Plaintiffs point to the previously mentioned affidavits of other union activists, and to the fact that no union activist had been promoted to district chief in suppression during Chief Marrs' tenure. The affidavits, however, merely express the union activists' "belie[f]" and "opinion" that Chief Marrs has denied Major Lunow, Major Hanson, and other union leaders promotions because of their union activity. Aplt's App. 544, 548. Once again, these statements are entitled to no weight because they are merely conclusory expressions of personal belief, without reference to supporting evidence. *See Murray*, 45 F.3d at 1422; *Tavery*, 32 F.3d at 1427 n.4.

As for the assertion that no union activist had been selected district chief in suppression by Chief Marrs, Plaintiffs would need to provide more context before this "statistical" fact would be probative. We have no idea, for example, how often a union activist (however defined) advanced to the final stage of the promotion process and lost out to a non-activist with lower test scores. All the record shows in this regard is what we have already stated: three of the Plaintiffs sought promotion on 11 occasions, were disqualified on 10 of those occasions by testing that is not challenged as discriminatory, and failed on the 11th occasion because Chief Marrs selected an equally qualified person who scored higher on the unchallenged testing. This is hardly evidence of anti-union retaliation.

-26-

We hold that the district court properly granted summary judgment on Major Lunow's claim that he was denied promotion to the position of Special Teams Coordinator in retaliation for his union activity.

### 3. *Major Hanson's non-promotion claims*

Finally, Major Hanson alleges that Chief Marrs refused to promote him to the position of district chief in the Department's support division because of his union activity. Major Hanson progressed beyond the assessment center and had his name submitted to Chief Marrs for selection on the two occasions he sought promotion: in 1994, when he applied for the position of Chief Training Officer, and in 1997, when he applied to become Chief Safety Officer.

In 1994 Chief Marrs promoted James Reynolds rather than Major Hanson to the Chief Training Officer position. Major Hanson testified that Mr. Reynolds was as qualified as he was but that Chief Marrs should have selected him, and that "[t]he denial of that promotion I have no doubts stemmed from the many controversial things that I did as a union officer and when I condemned Chief Marrs in writing as no one else had ever done before in my capacity as editor of the *Bugle* and *Dispatch*." Aplts' App. 457.

Yet Plaintiffs point to no direct evidence regarding what factors Chief Marrs actually considered when he made his decision, and their only circumstantial evidence of anti-union bias is the same evidence discussed above

with respect to the other Plaintiffs. Thus, Major Hanson has failed to create a genuine issue of fact as to whether his union activity was a motivating factor behind his failure to be promoted to Chief Training Officer, and his claim must fail.

Likewise, Major Hanson has failed to present evidence that anti-union bias was the reason he was not selected Chief Safety Officer in 1997. The final stage of the promotion process for that position was a scored interview before a panel of three firefighters from the Department. Major Hanson had the lowest interview score of the five candidates whose names were forwarded to Chief Marrs for selection; Bryan Heirston had the highest score, and the interviewers recommended that Chief Marrs select Mr. Heirston. (Again, Plaintiffs make no allegation in their briefs that Major Hanson improperly was given a low score because of his union activity.)

Chief Marrs selected Mr. Heirston, who at the time was active in union affairs at the national level. Major Hanson testified that he was never told that his union activity was the reason that he did not get the promotion, but stated that he knows his union activity was the reason, because "[i]t's as plain as the nose on your face, it's an accepted fact, past practices ha[ve] proven it out." Aplts' App. at 452. Such an assertion is not evidence.

Accordingly, there is insufficient evidence from which a reasonable jury could infer that Major Hanson's union activity was a motivating factor behind his failure to be promoted. His claim fails.

V. **CONCLUSION**

We hold that Plaintiffs have failed to present evidence sufficient to create a genuine issue of fact regarding whether Defendants violated their rights to free speech or free association. Hence, the district court properly granted summary judgment in favor of both Chief Marrs and the City. We **AFFIRM** the judgment of the district court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge