**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 8 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHIRLEY BURGESS;
OWEN HAWZIPTA,

     Plaintiffs-Appellants,

v.

INDEPENDENT SCHOOL DISTRICT
NO. I-4 OF NOBLE COUNTY
OKLAHOMA, a/k/a Frontier Public
Schools,

     Defendant-Appellee.

No. 02-6208
(D.C. No. 01-CV-1216-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**  *

---

Before **EBEL**, **HENRY**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*　　This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## Background

Appellants Shirley Burgess and Owen Hawzipta appeal the district court's order granting summary judgment to appellee Independent School District No. I-4 ("the School District") on their claims that the School District impermissibly retaliated against them for the exercise of First Amendment rights. Prior to her termination, Ms. Burgess was the cafeteria manager for the school district, while Mr. Hawzipta was an art teacher at the high school. The basic underlying facts are set forth in the district court's order:

> The dispute in this matter arose after students found pornographic material in a trash dumpster at the school. Hawzipta called the shipping company and was allegedly told that the high school principal, Mr. Robinson, had ordered the material. It was eventually determined that the elementary school principal, Mr. Stidham, had ordered the material. Mr. Stidham has admitted ordering the material. Defendant [the School District] terminated Hawzipta for making false allegations against Mr. Robinson. Hawzipta filed an action for *de novo* review of the termination. Following a non-jury trial the Noble County District Court ordered Hawzipta reinstated. Hawzipta alleges that when he was reinstated he was not returned to his former duties as an art teacher but was placed in a position as a teacher in the in-school suspension program. Burgess asserts she supported Hawzipta in various meetings and as a result her employment was terminated.

Aplt. App. at 69-70. Ms. Burgess and Mr. Hawzipta contend that their termination by the school board, negative performance reviews and/or written admonishments by Superintendent Shiever, and Mr. Hawzipta's reinstatement to a less-desirable position constituted retaliation for the exercise of First Amendment

rights–namely, expressing their position on the pornography, who had ordered it, and whether Mr. Hawzipta should have been punished for pointing the finger at Mr. Robinson. [1]

## The District Court's Decision

In granting summary judgment for the School District, the district court reasoned that to state a claim against the School District under 42 U.S.C. § 1983, appellants would have to show that the retaliation was the result of a longstanding custom or policy or the action of a final policy maker, citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989).  In Mr. Hawzipta's case, the court concluded that Superintendent Shiever was the final policy maker for purposes of issuing the written admonishments to Mr. Hawzipta.  Therefore, Mr. Hawzipta's claim did not impermissibly rely on a respondeat superior theory of liability.  The court further concluded, however, that Mr. Hawzipta had not shown the existence of a federally protected right in that his speech was not on a matter of public concern.

The district court considered Mr. Hawzipta's termination and reinstatement to a less-desirable position only in terms of the due process claim and concluded that Mr. Hawzipta had no protected property interest in a particular teaching

---

[1]     Ms. Burgess also presented the district court with a claim for breach of contract; however, this claim has been abandoned on appeal.

assignment.  The district court did not consider these actions as they related to the retaliation claim.

Regarding Ms. Burgess, the court determined that she had failed to show that the nonrenewal of her contract and/or the written admonishments she received were part of a policy or custom.

On appeal, Ms. Burgess and Mr. Hawzipta challenge the conclusion that their speech did not address a matter of public concern and that Ms. Burgess failed to prove custom or policy.    We review a grant of summary judgment de novo, affirming when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002).  We view the evidence and the inferences drawn therefrom in the light most favorable to the party opposing summary judgment.  *Hysten*, 296 F.3d at 1180.

**Ms. Burgess**

The legal test for establishing a First Amendment retaliation claim is (1) did the employee speak on a matter of public concern; (2) did the employee's speech interest outweigh the interest of the State as an employer; (3) was the speech a substantial factor or a motivating factor in the detrimental employment

decision, and (4) would the employer have taken the same action even in the absence of the protected speech. *Lybrook v. Farmington Mun. Schs. Bd of Educ.*, 232 F.3d 1334, 1338-39 (10th Cir. 2000).

Here, the district court reasoned that the negative performance reviews given Ms. Burgess and her eventual termination were not part of a policy or custom or a decision by a final policy maker. This rationale is difficult to understand in light of the fact that Superintendent Shiever admonished both Ms. Burgess and Mr. Hawzipta, and the district court did consider these admonishments to be actions by a final policy maker with respect to Mr. Hawzipta.

We nonetheless affirm summary judgment for the School District on Ms. Burgess' claim on different grounds. While it appears that Ms. Burgess, who allied herself with Mr. Hawzipta and supported him in conversations with her acquaintances, was a victim of the political maelstrom surrounding the pornography issue and Mr. Hawzipta's termination, it cannot be said that these actions were taken in retaliation for the exercise of First Amendment rights because Ms. Burgess did not speak on a matter of public concern.

As we have previously stated, "[i]t is not enough that the subject matter [of the speech] be of public concern; the content of the expression must also be of public concern." *Withiam v. Baptist Health Care of Okla., Inc.*, 98 F.3d 581,

583 (10th Cir. 1996). Thus, "[t]o be protected speech, the expression must 'sufficiently inform the issue as to be helpful to the public in evaluating the conduct of the government.'" *Id.* (quoting *Wilson v. City of Littleton*, 732 F.2d 765, 768 (10th Cir. 1984)). Here, Ms. Burgess expressed support of Mr. Hawzipta in private conversations and remained friendly with him throughout the controversy, but she did not speak at any hearings or meetings, or otherwise express her views to the larger public. Aplt. App. at 153. While Ms. Burgess commented on a topic of public interest, there is no evidence indicating that her comments themselves informed the public debate in any way.

### Mr. Hawzipta

*Speech on a matter of public concern*

Applying the same analysis to Mr. Hawzipta's claim, however, yields the opposite result: we conclude that Mr. Hawzipta's speech touched on a matter of public concern. After discovering that pornography had been found in the school dumpster, and that it had apparently been ordered by the high school principal, Mr. Hawzipta reported his concerns to Superintendent Shiever and demanded an investigation. He continued to agitate among his co-workers, arguing that action had to be taken on the issue. The debate over pornography at the school was covered in local newspapers. When it was determined that the accusation against Mr. Robinson was false, Mr. Hawzipta was terminated. Later, as part of the

-6-

settlement of a lawsuit by Mr. Robinson over the false accusation, Mr. Hawzipta was required to take out an ad in a local newspaper apologizing for his statements.

When Mr. Hawzipta was fired, he contested his termination in court, ultimately winning reinstatement. By challenging his dismissal and testifying in court about the fact that he believed the dismissal was inappropriate retaliation for his speech about the pornography issue, Hawzipta further stirred the pot regarding the issue of how the school responded to his accusation. Hawzipta's challenge of his dismissal thus touched off another round of public debate and media coverage.

Not only did Mr. Hawzipta's speech inform the public debate on these interrelated issues, it is fair to say there would have been no public debate at all had he not made his provocative statements. We therefore conclude that Mr. Hawzipta spoke on a matter of public concern.

*Detrimental employment decision*

The School District alternatively argues, in essence, that there was no detrimental employment decision because Mr. Hawzipta did not have a property interest in any particular teaching assignment (i.e., assignment as an art teacher versus assignment as a monitor in the in-school suspension program).

The School District does not explain how a property interest/due process concept is relevant to a First Amendment retaliation claim. The School District points to no authority stating that retaliation occurs only where an individual is deprived of a property interest. It is apparent that a school has an inherent right to terminate employees, reassign them, dispense negative performance reviews, and eliminate job responsibilities. This does not, however, mean that these actions can never constitute impermissible retaliation for the exercise of First Amendment rights.

This point is illustrated by our decision in *Schuler v. City of Boulder*, 189 F.3d 1304 (10th Cir. 1999). In *Schuler*, a Boulder Parks & Recreation employee complained about a janitor who was spying on women in the locker room and who was only lightly reprimanded when this conduct was discovered. *Id.* at 1306. Ms. Schuler's speech consisted of written complaints to her supervisor, comments to other employees at a going-away party, a complaint through her union, and statements to a television news reporter. *Id.* at 1306-07.[2] In response to these statements, Ms. Schuler received a written reprimand from a supervisor and a poor performance review. *Id.* at 1310. She also had responsibilities removed and

---

[2]    Without extensive analysis, we concluded that Ms. Schuler's speech touched on a matter of public concern. As in this case, her speech addressed both a controversial workplace incident and the retaliation against her for speaking out on that matter.

was subjected to an unwanted transfer to another position. *Id.* This court, noting Supreme Court precedent to the same effect, concluded that "deprivations less harsh than dismissal [can] nevertheless violate[] a public employee's rights under the First Amendment." *Id.* at 1309 (citation omitted). We further concluded that the actions taken against Ms. Schuler were sufficient to defeat the defendant's qualified immunity defense on summary judgment. *Id.* at 1310.

Very similar actions were taken by the School District in the instant case. Upon termination, Mr. Hawzipta was technically on suspension pending resolution of his challenge to the termination. The School District nonetheless hired a permanent replacement art teacher before de novo review of Mr. Hawzipta's termination was complete. Once Mr. Hawzipta won the right to be reinstated, he was assigned to a position which did not engage his specialized skills and experience as an art teacher and which greatly limited his interaction with other members of the school community. He suddenly began receiving negative performance reviews, and his additional duties as coach to the school's academic team were eliminated. Under our precedent in *Schuler*, Mr. Hawzipta has succeeded in showing that these actions were onerous enough to constitute a detrimental employment decision.

*Retaliatory motive*

In addition to showing that a detrimental employment decision was made, a plaintiff must show that the speech was a "substantial factor or a motivating factor" in that decision. *Lybrook*, 232 F.3d at 1338 (quotation omitted). A jury is entitled to infer retaliatory motive from the circumstances of the detrimental employment action. *See Ware v. Unified Sch. Dist. No. 492*, 881 F.2d 906, 911 (10th Cir. 1989) (jury may rely on circumstantial evidence of retaliatory motivation), *modified on reh'g by* 902 F.2d 815 (10th Cir. 1990). Viewing the events described above in the context of the ongoing and heated conflict between Mr. Hawzipta and the School District over the School District's reaction to the pornography issue, a reasonable jury could conclude that the School District acted with a retaliatory motive.

## Conclusion

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this decision.

Entered for the Court

Michael R. Murphy
Circuit Judge

-10-